**In the Matter of Ronald L. MALMEN and Karen A. Malmen, Debtors.**

**Bankruptcy No. 91–10569–8B3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 29, 1992.

Mark D. Jasperson, Tampa, Fla., for debtors.

Chris C. Larimore, trustee.

### ORDER IMPOSING SANCTIONS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing upon the Order to Show Cause directed to Debtors' bankruptcy counsel, Mark D. Jasperson. The Court, having heard argument of counsel and having considered the record, finds as follows:

### FACTS

On August 12, 1991, Debtors' homestead (the property) was sold at foreclosure sale pursuant to a judgment of foreclosure entered in the Pinellas County, Florida, Circuit Court. On that same day, after the foreclosure sale but before the issuance of a certificate of title to the property, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C.). Prior to the date of the foreclosure sale Debtors had employed counsel, Mark D. Jasperson (Jasperson), to file a Chapter 13 bankruptcy petition. Due to some inadvertence in Jasperson's office, the bankruptcy petition, although signed prior to

the foreclosure sale of the property, was not filed until after the sale.

Jasperson advised Debtors of various options under which they could proceed within the bankruptcy case notwithstanding the late filing. Jasperson indicated to Debtors he did not believe this Court would allow Debtors to cure their mortgage arrearage through the Chapter 13 plan since the petition had been filed after the foreclosure sale. *See Boromei v. Sun Bank*, 92 B.R. 516 (M.D.Fla.1988). Relying on this belief, Jasperson advised Debtors of the following options:

1. Proceed with the Chapter 13 case and appeal the anticipated denial of confirmation by this Court.

2. Convert the case to one under Chapter 7 of the Bankruptcy Code.

3. Apply for a loan and give a mortgage in an amount sufficient to satisfy the foreclosure judgment amount. Jasperson agreed personally to guarantee such a loan if necessary.

4. Obtain funds sufficient to redeem the property from the foreclosure sale by selling the property to be redeemed. Jasperson agreed to purchase the property by paying the judgment amount, paying off Debtors' unsecured indebtedness of approximately $22,000 and paying an additional $5,000 to Debtors for their remaining equity in the property.

Believing the last option to be in their best interests, Debtors chose to sell the property to Jasperson. Accordingly, Jasperson deposited funds in the registry of the state court on behalf of Debtors with the intent to redeem the property from the foreclosure sale. *See* Fla.Stat. ch. 45 and ch. 702 (1991). On September 17, 1991, Debtors entered into a contract for sale of the property with Jasperson and his spouse, which provided for the transfer of the property from Debtors to the Jaspersons. On October 3, 1991, it appears Debtors transferred the property by warranty deed to Jasperson.

On October 11, 1991, Debtors filed a Motion to Redeem Real Property, which sought permission of this Court to complete the redemption process already begun in state court. On October 24, 1991, this Court entered its Order Granting Motion to Redeem Real Property which extended the period of time within which Debtors could redeem the property by sixty days pursuant to 11 U.S.C. § 108. The Order was entered without prejudice to a determination by the state court of whether Debtors took the actions necessary to effectuate the redemption prior to the expiration of the sixty day extension.[1] Also on October 24, 1991, Debtors initiated an adversary proceeding by removing the state court foreclosure action to this Court.[2] On October 29, 1991, Debtors filed a Motion to Redeem Real Property in the adversary proceeding. On November 1, 1991, this Court entered its Order Granting Motion to Redeem Real Property in the adversary proceeding.

On November 8, 1991, Debtors filed a Motion to Dismiss the general Chapter 13 case. On November 23, 1991, the Court issued a Notice of Hearing setting the Motion to Dismiss for hearing on December 23, 1991. On November 27, 1991, more than two months after the contract for sale had been entered and nearly two months after the property had apparently been transferred by warranty deed to Jasperson, Debtors filed in the general bankruptcy case a Notice of Intention to Sell Property of the Estate and a Motion to Approve the Sale of Real Property to the Jaspersons. At a hearing on December 23, 1991, the Court denied the Motion to Approve the Sale of Real Property and granted the Motion to Dismiss Chapter 13 Case. However, the Court retained jurisdiction to consider involvement by Debtors' counsel in the redemption and sale of the property.

On February 11, 1992, this Court entered an Order to Show Cause against Jasperson directing him to appear at a hearing and show cause why he should not be sanctioned pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure or other

---

1. Subsequently, it appears the state court denied Debtors' initial request to redeem.

2. Adv. No. 91–718.

federal laws, including the doctrines described by the United States Supreme Court in *Chambers v. NASCO, Inc.,* — U.S. —, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

On February 21, 1992, a hearing was held on the Order to Show Cause. Jasperson appeared and was heard. At the conclusion of the hearing Jasperson was directed to file a brief or argument regarding the potential ramifications of *Chambers,* the Rules Regulating the Florida Bar and Rule 9011. On April 6, 1992, Jasperson filed his Memorandum of Law.

## DISCUSSION

 This Court has the inherent power to sanction attorneys appearing before it for bad faith conduct. *Chambers,* 111 S.Ct. at 2123; *Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir.1991). The Court finds the various actions taken by Jasperson over the course of this case constitute conduct sanctionable pursuant to *Chambers.*[3]

First, the Court notes the business transaction between Jasperson and Debtors was not revealed to the Court until almost a month after the contract for sale of the property had been signed and more than three weeks after the property had apparently been transferred to Jasperson. Even then, the revelation was not made by Jasperson, but rather by the disgruntled foreclosure sale purchaser.[4]

Even more important was Jasperson's failure to file the Notice of Intention to Sell Property of the Estate and the Motion to Approve Sale of Real Property until more than two months after the contract for sale had been entered and well over a month after the property had evidently been transferred to Jasperson. Clearly a moot effort at that stage. Furthermore, the Notice of Intention to Sell Property of the Estate and the Motion to Approve Sale of Real Property both contained seemingly misleading statements indicating the property had not already been sold.[5] These misstatements were compounded by Jasperson's failure to disclose the existence of the executed warranty deed in the Notice of Intention to Sell Property of the Estate or the Motion to Approve Sale of Real Property and by Jasperson's assertions at the February 21, 1992, hearing on the Order to Show Cause indicating the property was not transferred until after the Court dismissed the bankruptcy case on December 23, 1991.[6] Although it appears the warranty deed was recorded on December 24, 1992, Florida law provides the transfer of real property is effective against the grantor upon the proper execution and delivery of a written instrument. Fla.Stat. §§ 689.01–.04 (1991). In this case that date appears to be October 3, 1991.

Jasperson's actions and statements fall well below the level of veracity expected of practitioners appearing before this Court. Had the foreclosure sale purchaser not revealed the activities of Jasperson, in all

---

**3.** Although Debtors' bankruptcy case has been dismissed, this Court has the authority to retain jurisdiction to impose sanctions for conduct occurring during the pendency of the case. The United States Supreme Court has stated a determination of "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate ... may be made after the principal suit has been terminated." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990).

**4.** See Motion to Examine Transaction and to Convert this Proceeding to a Chapter Seven Liquidation filed October 30, 1991.

**5.** The Notice of Intention to Sell Property of the Estate stated "the Debtors ... *intend to sell* certain real property." (emphasis added)

The Motion to Approve the Sale of Real Property stated "[t]he Debtors *propose to sell* real estate which is property of the Estate." (emphasis added)

**6.** On page 5 of the transcript of the February 21, 1992, hearing on the Order to Show Cause, the following statements were made:

The Court: Has the property been transferred out of the Malmens' name?

Mr. Jasperson: The property has been transferred.

The Court: To whom?

Mr. Jasperson: The property has been transferred to me—*after* your ruling dismissing the case. (emphasis added).

likelihood those activities would never have been divulged. Rather, the Chapter 13 case would have been used as the conduit for a scheme designed not to pursue a Chapter 13 plan, but rather to protect Jasperson's interest in property obtained in an attempt solely aimed at avoiding malpractice liability created by the ill-timed filing of the bankruptcy petition.

■ The Court also considers relevant Jasperson's potential violations of the Rules Regulating the Florida Bar. Although discipline of attorneys practicing in Florida is primarily the responsibility of The Florida Bar and the Supreme Court of Florida, as mentioned above this Court has the inherent power to sanction attorneys for bad faith conduct. *Chambers*, 111 S.Ct. at 2123. Violations of state bar rules governing the ethical behavior of attorneys can constitute conduct sanctionable pursuant to the courts' inherent powers. *United States v. Fausto Del Carpio–Cotrina*, 733 F.Supp. 95 (S.D.Fla.1990).

Rule 4–1.7(b) of the Rules Regulating the Florida Bar forbids a lawyer from representing a client where the lawyer's own interests may interfere with the lawyer's representation of the client.[7] The Rule allows a lawyer to continue representing the client where the client consents and the lawyer reasonably believes the representation will not be adversely affected.

Jasperson's Memorandum of Law indicated Debtors were informed of the potential conflict between the interests of Jasperson and Debtors created by the entire business transaction resulting in the sale of the property and Debtors were further advised to seek independent counsel to review the transaction. The Memorandum also stated Debtors waived any potential conflict of interest and chose not to seek other counsel. Debtors' Affidavit, filed in lieu of Debtors' appearance at the February 21, 1992, Order to Show Cause hearing, stated when motions in opposition to their redemption of the property were filed by the successful bidder at the foreclosure sale of the property, Jasperson informed them:

> it may be appropriate to allow another Attorney to complete the litigation on [their] ... behalf. He offered to find alternative Counsel to complete the process. However, due to the length and complexity of the matters involved, [Debtors] ... requested that he continue to represent [them] ... through the conclusion of the proceedings.

■ In this case, Jasperson gained an interest in Debtors' property shortly after the commencement of the bankruptcy case. Once Jasperson entered into the contract for sale with Debtors, he attained a substantial, personal stake in the Chapter 13 case. Although Jasperson was required by Rule 4–1.7(b) to disclose the potential conflict to Debtors immediately, Debtors' Affidavit indicated the conflict was only discussed after the successful foreclosure sale bidder began to dispute Debtors' attempts to redeem the property. However, even assuming Jasperson timely informed Debtors of the conflict, this Court is unconvinced Jasperson could have reasonably believed his representation of Debtors would not be adversely affected where he was so intimately interested in the primary asset of the estate.[8] Once the contract for sale was entered and ultimately consummated, the only possible reason for continuing with the bankruptcy case was protection of Jasperson's interests in the property. It is clear at that point Debtors could gain no further advantage by continuation of the case since all the benefits normally obtained by a Chapter 13 case had been real-

---

7. Rule 4–1.7(b) of the Rules Regulating the Florida Bar provides:
 A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited ... by the lawyer's own interest, unless:
 (1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation.

8. The comments to Rule 4–1.7 state "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ... provide representation on the basis of the client's consent." *See Florida Bar v. Kramer*, 593 So.2d 1040, 1041 (Fla.1992).

ized through the contract for sale of the property.[9] Furthermore, had the Court chosen to convert this case to one under Chapter 7, the potential negative ramifications on Debtors of continuing the bankruptcy case could have been considerable. Thus, it is clear Jasperson's interests not only interfered with his representation of Debtors, they completely dominated all actions taken in the bankruptcy case. Such a pervasive conflict of interest clearly could not be waived by Debtors under Rule 4–1.7(b).

Also of relevance to the activities of Jasperson in this case is Rule 4–1.8(a) of the Rules Regulating the Florida Bar. Rule 4–1.8(a) governs business transactions between attorneys and their clients. Rule 4–1.8(a) requires such business transactions to be fair and reasonable to the client and to be fully disclosed to the client. Furthermore, Rule 4–1.8(a) requires the attorney to give the client an opportunity to seek independent counsel and to obtain the client's written consent to the transaction. Debtors' Affidavit filed February 18, 1992, indicated Debtors consented to the transaction and that its terms were fully acceptable to them. Although Debtors have not contested the fairness of the terms of the agreement with Jasperson, the Court notes with some interest the fact that the appraised value of the property for tax purposes appears to be $137,400,[10] but the full purchase price according to the contract for sale was only $135,000. Furthermore, as mentioned above, it appears from Debtors' Affidavit Jasperson did not recommend that they obtain the advice of independent counsel with regard to the transaction until opposition to the attempt to redeem the property was encountered. Giving the required advice at that point was at best untimely.

In addition to sanctioning attorneys for bad faith conduct under *Chambers*, the Court may also sanction attorneys for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure.[11] Rule 9011 states:

> The signature of an attorney ... constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.

The Supreme Court of the United States has stated "the central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Underlying this goal, Rule 9011 requires "that the actions of counsel comport with the accepted standards of practice." *In re Jerrels*, 133 B.R. 161, 164 (Bankr.M.D.Fla. 1991).

The appropriate standard to be applied in analyzing actions under Rule 9011 is reasonableness under the circumstances. *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir.1992). This objective standard requires the Court to go beyond mere assertions of good faith and determine instead whether a reasonable person would have taken the actions taken by the attorney in a particular case.

---

9. Paragraph 9 of Jasperson's Memorandum of Law filed after the Order to Show Cause hearing stated "[d]uring the period between October 21, 1991 and November 8, 1991 all action taken [in the case] ... pertained to preserving and assuring the Debtors' right to redeem the subject property."

This Court considers the accuracy of that statement to be questionable given the existence of the contract for sale and the fact the property had apparently been transferred by warranty deed to Jasperson without this Court's approval on October 3, 1991.

10. See Tax Appraisal Report attached to Motion to Examine Transaction and to Convert this Proceeding to a Chapter Seven Liquidation filed in the general case on October 30, 1991.

11. Rule 9011 is the counterpart of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, case law interpreting Rule 11 is applicable to analysis under Rule 9011. *In re Grand Hotel Ltd. Partnership*, 121 B.R. 657, 659 (S.D.Fla. 1990).

In accordance with the reasonableness standard, this Court holds a reasonable person under the circumstances of this case would have concluded there was no proper purpose in continuing the bankruptcy case after the contract for sale and warranty deed had been executed. At that point, Debtors had no reason or apparent intention to pursue a Chapter 13 plan since the agreement with Jasperson essentially provided more benefits than Debtors could possibly expect from the Chapter 13. Once Jasperson had successfully sheltered his interests in the property from potential loss, he simply discarded the cloak of protection created by Debtors' bankruptcy case.

Jasperson has argued repeatedly that during its entire pendency, the bankruptcy case served both himself and Debtors. He has stated the bankruptcy case was continued in order to protect Debtors' equity in their home by permitting Debtors an opportunity to redeem their property. He has also contended if the redemption of the property could not be accomplished either through the bankruptcy case or the state court proceedings, the money paid under the contract for sale would be returned and Debtors would proceed towards proposal of a plan.[12] These assertions are not supported by the contract for sale, the statements in Debtors' Affidavit or common sense. Debtors had an apparently valid and enforceable contract for sale. It seems highly improbable Debtors would have released Jasperson from his contractual obligations in the event the property could not be redeemed.[13] Debtors' monetary interests were fully protected by the contract. If the redemption failed, the loss would fall entirely upon Jasperson, not upon Debtors. It is for this reason the Court views continued pursuit of the bank-ruptcy case after execution of the contract for sale to be in bad faith and thereby sanctionable pursuant to Rule 9011. *See Aetna Ins. Co.*, 953 F.2d at 1332 (the continuation of litigation after it becomes clear there is no good faith reason for doing so constitutes a violation of Rule 11).

It follows from this reasoning and from a review of the various pleadings filed in this case and in the adversary proceeding that each document filed after the execution of the contract for sale was filed for the improper purpose of avoiding malpractice liability on the part of Jasperson and protecting Jasperson's interests in the property. The various motions to redeem filed in the general case and the adversary proceeding, although filed ostensibly for the purpose of protecting Debtors' equity in their home, were in actuality meant only to protect Jasperson's interests. Furthermore, as discussed above, the Notice of Intention to Sell Property of the Estate and the Motion to Approve Sale of Real Property—apart from containing misleading statements which alone were sufficient to subject Jasperson to Rule 9011 sanctions—were clearly filed after the fact as a countermeasure against the potential denial of the Motion to Dismiss.

The Court also considers the petition signed by Jasperson on September 17, 1991, and filed on September 24, 1991, to have been filed in bad faith. Arguably, Debtors' original bankruptcy petition was filed and signed in good faith on August 12, 1991, in that it was possible on that date neither Debtors nor Jasperson were aware that the foreclosure sale had occurred prior to the bankruptcy petition being filed. However, the original petition was not signed by Jasperson himself, rather it was signed for Jasperson by an associate with his firm. Jasperson signed a du-

---

12. On page 19 of the transcript of the February 21, 1992, hearing on the Order to Show Cause, Jasperson stated "[i]f the Court had refused to allow the right to redeem, the property—the money would have been refunded and the debtors would have sought to cure the arrearage under the Chapter 13 plan."

13. Any agreement requiring Debtors to return the money paid by Jasperson under the contract if redemption of the property could not be accomplished—particularly since the entire business transaction was spawned by an error on the part of Jasperson's office in filing the bankruptcy petition—would seem to be inherently inequitable to Debtors in violation of Rule 4-1.8(a)(1) of the Rules Regulating the Florida Bar.

plicate petition on September 17, 1991, the same date he entered the contract for sale of the property with Debtors. At that point the bankruptcy case was a mere fiction sustained solely for Jasperson's benefit.

■ This Court recognizes the imposition of sanctions in any form must be made with some reservation taking into consideration the goal of deterring inappropriate behavior while at the same time encouraging diligent advocacy. *Chambers,* 111 S.Ct. at 2132–33; *Cooter & Gell,* 110 S.Ct. at 2454. However, as discussed above, Jasperson's actions in this case went well beyond the level of mere diligent advocacy on behalf of a client and are of the type which should be actively discouraged by the imposition of sanctions.

Consequently, in light of Jasperson's conduct viewed from the perspectives of the Court's inherent power to sanction an attorney for bad faith conduct, the Rules Regulating the Florida Bar, and Rule 9011 of the Federal Rules of Bankruptcy Procedure, this Court deems it appropriate to sanction Jasperson.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that monetary sanctions are hereby imposed on Mark D. Jasperson in the amount of $20,000.00, payable to the Clerk of the Court within 60 days of the date of this Order. It is further

ORDERED, ADJUDGED AND DE-CREED that the Clerk of the Court shall transmit a copy of this Order to the Grievance Committee of The Florida Bar for its consideration. It is further

ORDERED, ADJUDGED AND DE-CREED that the Clerk of the Court shall transmit a copy of this Order to Chief Judge Susan H. Black of the United States District Court for the Middle District of Florida for consideration of whether this matter should be forwarded to the Grievance Committee for the District Court.

DONE AND ORDERED.