In re Dolores GUNN, Debtor.

In re Angelo R. RHODES, Debtor.

In re Patricia HARVEY, Debtor.

In re Jerone COPPOCK, Debtor.

Bankruptcy Nos. 93–17113DAS, 93–17115DAS, 93–17131DAS and 93–17149DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

April 19, 1994.

---

Erik B. Jensen, Philadelphia, PA, for peti-tioner.

Michael A. Shore, Bobrin, Shore & New-man, Philadelphia, PA, former atty. for peti-tioner.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

Frederick L. Reigle, Reigle & Gellert, P.C., Standing Chapter 13 Trustee, Reading, PA.

Joseph Minni, Office of Asst. U.S. Trustee, Philadelphia, PA.

*MEMORANDUM*

DAVID A. SCHOLL, Chief Judge.

The matter before this court is a Petition ("the Petition") of Michael Turner ("the Petitioner"), a non-attorney, to resume providing services to debtors under the supervision of a new attorney, Erik B. Jensen, Esquire ("Jensen"), who prosecuted the Petition on his behalf. The Petition was necessitated by this court's finding of unauthorized practice of law on the part of the Petitioner after the dissolution of a firm with which he had previously worked. Because the entry of this Order constitutes an unusual exercise of this court's powers, we deem it appropriate to briefly explain our authority to exercise these powers and our reasons for choosing the precise form of Order that we have.

■ Initially, we note that this court has the inherent power to sanction attorneys which appear before it. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 41–51, 111 S.Ct. 2123, 2131–36, 115 L.Ed.2d 27, 43–53 (1991); *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160 (3rd Cir.1984), *cert. denied sub nom. Cochrane & Bresnahan v. Plaintiff Class Representatives,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *In re Abrams,* 521 F.2d 1094, 1099, 1101 (3rd Cir.), *cert. denied sub nom. United States District Court v. Abrams,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975); *In re Placid Oil Co.,* 158 B.R. 404, 408 (N.D.Tex.1993); *In re Assaf,* 119 B.R. 465, 467 (E.D.Pa.1990); *In re Malmen,* 140 B.R. 819, 822 (Bankr.M.D.Fla. 1992); and Annot., *Negligence, Inattention or Professional Incompetence of Attorney in Handling Client's Affairs as Grounds for Disciplinary Action,* 96 A.L.R.2d 823, 829 (1964).

■ This power includes the right to suspend an attorney from practice in this court altogether, *see e.g., Assaf, supra,* 119 B.R. at 467–68, or to impose fines upon practicing attorneys for failure to abide by court directives.

*See In re Affairs with a Flair, Inc.,* 123 B.R. 724 (E.D.Pa.1991). An attorney's misuse of the bankruptcy system for his personal advantage has also been held to be a

sufficient basis to justify suspension from practice. *See In re Heard,* 106 B.R. 481 (Bankr.N.D.Ohio 1989).

■ As we noted in *In re Evans,* 153 B.R. 960, 966 (Bankr.E.D.Pa.1993), and numerous cases cited therein, bankruptcy courts also have the same powers to regulate the conduct of non-attorneys who attempt to assist debtors who come before it as they do attorneys. *See also In re Cochran,* 164 B.R. 366, 367–68 (Bankr.M.D.Fla.1994); and *In re Robinson,* 162 B.R. 319, 326 (Bankr.D.Kan. 1993).

■ Finally, we observe that it is highly appropriate for this court to engage in its own efforts at regulating those who assist debtors coming before it, *see Evans, supra,* 153 B.R. at 966–72, as well as taking the lead in reporting unethical conduct of counsel and other advocates to appropriate regulatory bodies. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES, Canon 3B.(3); and J. Levy, *The Judge's Role in the Enforcement of Ethics—Fear and Learning in the Profession,* 22 SANTA CLARA L.REV. 95, 102–12, 116 (1982).

■ This court has been concerned, for some time, with various aspects of the nature of the practice of bankruptcy law by firms headed by Thomas J. Turner, III ("Thomas"), Turner's brother, including excessive multiple filings and multiple charges to clients, lack of communication between clients and their representatives, sloppy work-product, and deficiencies in financial matters. In late 1988, it was established, in a series of hearings initiated by this court, that the Petitioner was performing much of the legal work in his brother's firm, as he had in prior firms which did not include Thomas, without adequate supervision. Reportedly, thereafter, Thomas took a more active role in supervision of the firm's legal work. However, the work-product of Thomas' most recent firm, Thomas J. Turner, III, P.C. ("the Firm"), continued to be of poor quality. The role of the Petitioner in the firm after 1989 is, however, not known to this court and remains somewhat unclear. What is known is that Thomas, the Petitioner, and, in one instance, the Firm, have filed numer-

ous bankruptcy cases on their own behalf in this period. *Cf. Heard, supra.*

The deficient financial practices of Thomas' firm came to light upon Thomas' suspension from the practice of law for two years by Order of the Supreme Court of Pennsylvania, effective November 14, 1993. Initially, we note that, upon the Firm's dissolution, the Petitioner became embroiled in a dispute with a proposed successor firm and the landlord of Thomas' firm over his right to preclude others access to the client files, which required this court's intervention to resolve. This apparent attempt to keep at least some of the Firm's clients as his own resulted in the Petitioner's engaging in the unauthorized practice of law in assisting certain former clients of the Firm (hereinafter, these parties are referenced collectively as "the Debtors") in filing new *pro se* bankruptcies. In the course of this "representation" of certain of the Debtors, the Petitioner collected funds representing advances for filing fees ($160) and retainers for as yet unidentified prospective counsel (usually about $240 to $300), as well as fees by the Petitioner for his own services (usually about $300).

On December 8, 1993, having become aware of the first such filings by the Petitioner, this court entered an Order of December 8, 1993, which, *inter alia,* enjoined the Petitioner from making any further efforts to assist debtors in filing bankruptcies, or collecting fees for such services, pending a hearing on December 16, 1993. After that hearing, an Order of December 17, 1993, was entered. The Order, a copy of which is attached as Appendix "A," *inter alia,* permanently enjoined the Petitioner from engaging in the authorized practice of law; required him to present a motion to the court before he engaged in any further bankruptcy-related services; and directed him to refund a total of $5,200 paid to him by a total of thirteen (13) Debtors from whom he had admittedly collected funds on or before January 24, 1994, in activities which we deemed to have been the unauthorized practice of law.

Upon noting that the Petitioner had filed a bankruptcy case of his own (his third bankruptcy filing) on January 4, 1994, and believing that few pre-petition refunds to the Debt-

ors had been made, this court entered an Order of February 15, 1994, requesting the Petitioner to file an accounting, on or before March 1, 1994, of precisely what refunds had been made or were planned to be made to the Debtors in the future. We received a report indicating that only three refunds, totalling less than $1,000, had been made from the funds originally collected, and a statement that the Petitioner's wife was "considering advancing (him) the necessary funds" to pay the Debtors.

On February 22, 1994, the instant Petition seeking permission to allow the Petitioner to be employed as a bankruptcy paralegal in his firm was filed by Michael A. Shore, Esquire ("Shore"). It was scheduled for a hearing on March 22, 1994. On March 9, 1994, Jensen indicated, by letter, his desire to employ the Petitioner in a similar capacity. On March 21, 1994, Jensen filed a withdrawal of an appearance of Shore and his own entry of appearance, which he indicated, at the hearing, expressed his intention to replace Shore as the Petitioner's prospective employer.

We should also note that, in late December, 1993, certain clients and former clients of Thomas asserted complaints that Thomas had collected fees from them to file bankruptcy cases, but that Thomas had never filed bankruptcies on their behalf and was of course now incapable to doing so due to his suspension from the practice of law. At hearings of January 27, 1994, and March 10, 1994, Thomas admitted that he or his Firm had collected over $12,000 from over thirty (30) clients and former clients, but that such sums had been placed in the firm's general accounts and had thereafter been dissipated on other expenses. Without wishing to totally attribute Thomas' actions in this regard to the Petitioner without evidence of his role, we note that the Petitioner stated that collecting and recording fees paid to the Firm by clients was one of his responsibilities. Clearly, he was aware that separate escrow accounts were not established for the Firm's clients and that client funds were commingled with other funds, subject to dissipation, and were ultimately dissipated. He never brought his matter to the attention of this court in any of the foregoing proceedings or otherwise.

The hearing on the Petition, conducted on March 22, 1994, was attended by several former attorneys employed by the Firm, at this court's request; and by two attorneys representing clients with grievances against the Firm; an Assistant United States Trustee ("the AUSTE"); and the Philadelphia-based Standing Chapter 13 Trustee. Two issues emerged: (1) the Petitioner's intentions of, and prospects for, repaying the Debtors whose funds he had not repaid despite our Order of December 17, 1993; and (2) the scope of services which it was projected that the Petitioner would perform at Jensen's firm.

The responses of the Petitioner to inquiries on these issues were not comforting. Although he expressed an intention to reimburse all of the Debtors from whom he took funds in full, the Chapter 13 Plan filed in his own case contemplated payments of only $100 monthly for 36 months, or a total of $3,600, on account of all claims against him. While the Debtors were listed as priority creditors in his Schedules, a federal tax delinquency and a student loan were also listed as priority claims, bringing the total of priority claims listed to $12,530.00. Since priority claims must be paid in full in a Chapter 13 plan, *see* 11 U.S.C. § 1322(a)(2), the plan was clearly infeasible on its face. It is difficult to understand how someone as conversant with Chapter 13 of the Bankruptcy Code as the Petitioner purports to be could propose such a clearly defective plan in good faith. The foregoing leaves a serious question in our mind as to whether the Petitioner is ready, willing, or able to actually repay the Debtors.

In his recitation of the services which it was contemplated that the Petitioner would perform under Jensen's supervision if the Petition were granted, the Petitioner could identify only marketing, *i.e.*, solicitation of Chapter 13 clients for Jensen's firm, despite repeated probing by the AUSTE. As to describing further prospective services, the Petitioner stated that he would have to begin his employ with Jensen before he could identify same. This reply appeared extremely evasive, because the Petitioner has worked

as a Chapter 13 paralegal for many years and is well aware of the potential services which are likely to be assigned to him by Jensen. He and Jensen should have carefully thought this issue through before Jensen replaced Shore on the Petition. The Petitioner's refusal to identify any services suggests that he intends to engage in services which he fears might be designated as the unauthorized practice of law, or are at best on the borderline of such activities, and is therefore unwilling to go on record as so stating, recognizing this court's limited capacity to monitor his activities once his employment begins.

For his part, Jensen conceded that he presently has a modest bankruptcy practice and presently files very few Chapter 13 cases. Therefore, a scenario of the Petitioner's taking substantial responsibility in handling all facets of a large prospective Chapter 13 practice by Jensen appears a strong possibility. This is exactly the sort of services that the Petitioner performed for the Firm, and which led, upon the Firm's collapse, to a myriad of logistical problems with confused and unrepresented debtors coming before this court. It also led to the most unfortunate development of financial setbacks for the Debtors, who are apt to be unable to afford same, at the very hands of the Petitioner and Thomas, their legal representatives. This court has attempted, with only modest success, to remedy these actions of both the Petitioner and Thomas. This is a scenario which we must take every possible means to prevent from recurring.

■ In light of our misgivings about the nature and likely duration of the Petitioner's association with Jensen, we have strongly considered denying the Petition before us entirely. This court has a duty to protect debtors from victimization by unethical practitioners. The Petitioner's claims that this court would deny him of a right to make a living were it to deny the Petition are neither persuasive in fact, nor decisive even if they were true. Practice in this bankruptcy court is hardly the universe of all profitable endeavors for the Petitioner or anyone else. This court should be most reluctant to allow a party who has long been a party to poor quality representation and questionable legal and financial practices, and has recently been proven to have a propensity to engage in unauthorized practice of law and then refused to pay the consequences, to continue on his way to victimize more debtors, simply because of his protestations that he is devoted to "helping" them.

However, giving the Petitioner the benefit of our considerable doubt about the forethought and likely success of his proposed venture with Jensen, and despite our recognition that this resolution will require us to devote additional resources to this matter than we would if we denied the Petition, we have decided to apply a more conservative means of protecting debtors than outright denial of the Petition. We must concede that Jensen has expressed a willingness to accept the considerable responsibility of supervising the Petitioner, although his last-minute succession of Shore leaves us with some discomfort. But we do have reason to expect that Jensen will be more successful, or at least more willing, to admit any failures to check unsavory aspects of the Petitioner's conduct to this court than was the Petitioner's brother.

Therefore, we have entered an Order which will hopefully result in the Debtors' recovery of the sums improperly collected from them by the Petitioner, as well as allowing us to monitor the Petitioner's future conduct. We have emphasized Jensen's personal responsibility for the Petitioner's supervision. We have restricted the Petitioner from performing the types of services which have led to his unauthorized practice of law at the expense of his victims in the past before it is resumed, consistent with a proposed Order submitted by Jensen. We have required the Petitioner to repay all of the Debtors, from funds from his wife or otherwise, or to obtain confirmation of a Chapter 13 plan which will repay these parties in full as a condition of his employment. We recognize that this provision will probably result in the Petitioner's inability to commence employment with Jensen until at least May 19, 1994, the first scheduled date to consider confirmation of his plan. However, we can conceive of no other effective means of assuring the Peti-

tioner's fulfillment of his obligations to repay the Debtors. It is, moreover, only the prospect of a confirmable Chapter 13 Plan which prompts us to recede from requiring the Petitioner to make payment to the Debtors in full as a condition precedent to commencement of his employment by Jensen.

Other provisions are meant to attempt to prevent the possibility that the Petitioner will evade his commitments to the Debtors and to desist from the unauthorized practice of law once this court allows him to resume his employment. Termination of his relationship with Jensen or dismissal of his bankruptcy case prior to its consummation will effect a rescission of this order and return him to the status quo of being precluded from assisting debtors filing cases in this court.

The court will also attempt to put all future clients of Jensen serviced by the Petitioner on notice of his history, in order that these debtors can engage his services with their eyes opened to his past transgressions. This is accomplished by requiring delivery of the order accompanying this Memorandum upon these parties. Finally, this court will periodically review the services which the Petitioner performs for Jensen, which he was purportedly unable to recite prior to commencement of the engagement. Any future improprieties are, of course, very likely to result in the Petitioner's immediate and permanent suspension from performing any services for potential debtors in this court and any other bankruptcy court in the United States.

Only time will tell whether we have effectively utilized our powers to adequately protect debtors filing bankruptcy petitions in this court in the future by means of this Order.

## APPENDIX A

AND NOW, this 17th day of December, 1993, after an extended colloquy with interested parties and a hearing of December 16, 1993, on matters relating to the former law office of Thomas J. Turner, III, Esquire ("Thomas"), described in our prior Order of December 8, 1993, it is ORDERED as follows:

1. The landlord of Thomas' former office at 1015 Chestnut Street, Philadelphia, Pennsylvania, shall turn over all former files of the Turner law office to Karolina F. Perri Esquire, who shall be responsible for storing and monitoring these files and assisting the Debtors.

2. We find that Michael Turner ("Michael") has engaged in the unauthorized practice of law in representing the individuals in the above-entitled cases and cases assigned to other judges in this court, as he has engaged in providing a wide variety of legal services to the Debtors in these cases. *See In re Evans*, 153 B.R. 960, 966–71 (Bankr. E.D.Pa.1993); *In re Harris*, 152 B.R. 440, 445 (Bankr.W.D.Pa.1993); and *In re Arthur*, 15 B.R. 541, 547 (Bankr.E.D.Pa.1981).

3. We find that irreparable harm will be caused to individual Debtors and the bankruptcy system unless we act. Therefore, Michael is ORDERED to cease assisting any persons or entities in filing bankruptcy petitions or in charging any parties for services related to their bankruptcy cases under any circumstances, whether under supervision of an attorney or not, unless express permission to do so is granted by this court, after motion and hearing.

4. Our post-hearing review of the pertinent case authority leads us to conclude that, since Michael has imposed charges upon debtors for services which constitute the unauthorized practice of law, all fees charged must be repaid. *See Harris, supra,* 152 B.R. at 446–47; *In re Herren*, 138 B.R. 989, 996 (Bankr.D.Wyo.1992); *In re Webster*, 120 B.R. 111, 115 (Bankr.E.D.Wis.1990); and *Arthur, supra,* 15 B.R. at 547–48. *Compare In re Skobinsky*, Bankr. No. 93–12504DAS, 1993 WL 666699 (Bankr.E.D.Pa. May 28, 1993) (layman who was himself a debtor not required to refund $160 fees to other debtors because he was protected by the automatic stay); and *Evans, supra,* 153 B.R. at 969–72 (layman allowed to retain $100 from the client because services were found not to be the unauthorized practice of law).

Therefore, Michael is ORDERED to do the following, on or before January 24, 1994:

a. Refund all sums listed in his response to our Order of December 8, 1993, to the respective debtors except filing fees:, *i.e.,*

| | |
|---|---|
| Larry Brinson | $ 40.00 |
| Earl Lewis | 540.00 |
| Dolores Gunn | 460.00 |
| Sally Abney | 10.00 |
| Valery Johnson | 540.00 |
| Angelo Rhodes | 590.00 |
| Edna Lewis | 440.00 |
| Patricia Harvey | 600.00 |
| Joseph White | 300.00 |
| Irene Pralour | 300.00 |
| Gerone Coppock | 540.00 |
| Daniel and | |
| Barbara Bobst | 340.00 |
| Jim Wooley | 500.00 |

b. Remit all funds listed on Michael's Response to the Order of December 8, 1993, "Collected for Steinbacher & Perr," a copy of which is attached hereto as Exhibit "A," to Karolina F. Perr, Esquire.

c. Provide evidence to the court in chambers that all such refunds have been made.

5. We note that Debtors Rhodes and Harvey failed to appear at the hearing of December 16, 1993, possibly because our Order failed to include them as recipients of that Order. The said Debtors shall appear at a hearing at the following date, time, and place to show cause why they failed to appear at the hearing of December 16, 1993:

THURSDAY, JANUARY 13, 1994, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

If these Debtors again fail to appear, or are unable to provide a satisfactory reason for why they failed to appear, their cases will be dismissed.

## EXHIBIT A

### THE FOLLOWING MONIES WERE COLLECTED FOR STEINBACHER & PERR, ATTORNEYS AT LAW.

| | | |
|---|---|---|
| 12/3/93 | SYLVIA SATCHELL | 360.00 |
| 12/4/93 | WILLIAM BARRY | 200.00 |
| 12/3/93 | LUZ GONZALEZ | 85.00 |
| 12/4/93 | JOSEPH CONRAD | 150.00 |
| 12/6/93 | EDDIE OLIVER | 325.00 |
| 12/6/93 | LOUIS NORDABY | 275.00 |
| 12/13/93 | LUCILLE FORD | 200.00 |

### THE FOLLOWING MONIES WERE COLLECTED AS ESCROW

| | | |
|---|---|---|
| 12/3/93 | DAVID HICKS | 600.00 FOR TRUSTEE PAYMENTS PAID ON 12/10/93. TO E. SPARKMAN, ESQ. |
| 12/6/93 | JOANNE JERRY | 295.00 |
| 12/13/93 | ARTHUR COLEMAN | 900.00 |

---

## ORDER

AND NOW, this 19th day of April, 1994, after a hearing of March 22, 1994, to consider the Petition of MICHAEL TURNER ("the Petitioner"), ultimately presented by the LAW OFFICES OF ERIK B. JENSEN, P.C. ("Jensen"), in which the Petitioner requested permission to assist persons or entities in filing bankruptcy petitions or in charging any parties for services related to bankruptcy cases under the employment of Jensen, as required by paragraph three of our order of December 17, 1993 ("the Order"), in these cases, and having serious reservations that the Petitioner should be permitted to

resume performance of such services in light of his recent engagement in unauthorized practice of law and his failure to refund payments to his former "clients" (hereinafter "the Debtors"), as directed in paragraph four of the Order, but nevertheless concluding that it is appropriate to experiment with allowing the Petitioner to engage in some bankruptcy-related employment under the personal supervision of Jensen, it is hereby

ORDERED AND DECREED that, pursuant to the following guidelines and conditions, the Petitioner is permitted to be employed as a paralegal in bankruptcy matters by Jensen:

1. All services performed by the Petitioner are to be performed under the supervision of Erik B. Jensen, Esquire, personally. Jensen shall be personally responsible, financially and ethically, for all actions of the Petitioner undertaken while he is in Jensen's employ. If the Petitioner's employment with Jensen terminates, Jensen is directed to notify this court forthwith, at which time this order will become null and void; the Order of December 17, 1993, will become effective once again; and the Petitioner will be obliged to reapply for permission to engage in other employment within the scope of paragraph three of the Order before resuming any such employment.

2. In no event shall the Petitioner perform any services which involve charging or quoting fees; collecting fees, except for the administrative task of preparing a written receipt when under the direction and supervision of Jensen; signing court papers; or dispensing legal advice to debtors or other clients of Jensen, except such information as is within the specific knowledge and domain required of a paralegal, and under the direct supervision of Jensen.

3. Prior to commencement of any employment with Jensen, the Petitioner shall either (a) comply fully with all provisions of paragraph 4a, 4b, and 4c of the Order (requiring refunds in full to the Debtors and presentation of evidence of same to this court); or (b)(1) obtain confirmation of a plan of reorganization in his Chapter 13 bankruptcy case (Bankr. No. 94–10075DWS) ("the Chapter 13 Case") which provides, *inter alia*, that all provisions of paragraphs 4a, 4b, and 4c of the Order must be satisfied prior to discharge; and (b)(2) thereafter, duly complete and obtain a discharge in the Chapter 13 Case.

Therefore, unless payment is made in full to the Debtors, the Petitioner may commence employment only upon confirmation of a plan in the Chapter 13 Case which will certify full repayment to the Debtors, and he may continue in that employment only as long as the Chapter 13 Case is not dismissed, converted to another Chapter, or its Chapter 13 status is not otherwise terminated without a discharge pursuant to 11 U.S.C. § 1328(a).

4. In order to assure that parties assisted by the Petitioner in his employment with Jensen are aware of the limitations placed upon the Petitioner's scope of employment, a copy of this Order shall be given by Jensen to each of his clients for which the Petitioner provides services, pending further Order of this court. Any such clients having grievances against the Petitioner are invited to appear at the hearing scheduled in paragraph 5 of this order, or at subsequent review hearings, and are also invited to contact the court directly as follows:

The Honorable David A. Scholl

Chief Bankruptcy Judge

3722 United States Court House

601 Market Street

Philadelphia, PA 19106–1763

(215) 597–1274

5. Review of the Petitioner's adherence to the conditions of this Order may be periodically undertaken by this court. An initial review hearing is scheduled on TUESDAY, JUNE 28, 1994, AT 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.