In re OLYMPIA HOLDING CORPO-RATION, a/k/a P*I*E* Nation-wide, Inc., et al., Debtors.

Bankruptcy Nos. 90–4195–3P7, 90–4223–3P7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 16, 2000.

Gardner F. Davis, Jacksonville, FL, for plaintiff.

Michael G. Neri, Philadelphia, PA, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This case came before the Court upon the Objection of Lloyd T. Whitaker (the "Trustee") to the administrative claims of the Teamsters Pension Trust Fund of Philadelphia and Vicinity and the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (collectively, the "Funds"). The parties stipulated to the following facts. (See Doc. 20680.)

1. The Funds are employee benefit plans which provide pension, medical and related benefits to their participants and beneficiaries.

2. Debtor was signatory to various collective bargaining agreements which required Debtor to make monthly contributions to the Funds on behalf of certain of Debtor's employees.

3. On October 16, 1990 (the "Petition date") Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor owed the Funds $111,829.38 for unpaid, pre-petition contributions, the amount and status of which are no longer in dispute.

**138**

4. By letter dated November 26, 1990, Debtor informed the Funds that their post-petition contributions would be paid in the ordinary course of business. The Funds had actual knowledge of Debtor's Chapter 11 case.

5. Debtor failed to make the contributions due the Funds after the Petition date. The total amount of unpaid, post-petition payments was $49,841.89. The Funds had actual knowledge of Debtor's failure to make the required post-petition payments to the Funds.

6. Debtor ceased operating during the Chapter 11 period and terminated the employment of all employees covered by the Funds. The Funds had actual knowledge that the covered employees had been terminated by Debtor and that Debtor had ceased operations.

7. On March 11, 1991 Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. The Order Converting Case to Chapter 7 and Fixing Time for Filing Claims (the "Order") and the Notice by the Clerk of Meeting of Creditors and Appointment of Trustee (the "Clerk's Notice") were the only mailings sent to all creditors in either the Chapter 11 or the Chapter 7 case notifying them of deadlines within which to file claims against Debtor. The Order and Clerk's Notice were not mailed to the Funds' proper address and the Funds did not receive them.

8. On June 20, 1991 the Trustee filed his Chapter 11 Trustee's Final Report, and Account and Schedule of Unpaid Obligations Incurred During Pendency of Chapter 11 Proceeding (the "Report").

9. On August 21, 1992 the Funds filed two proofs of claim asserting general unsecured and pre-petition priority claims against Debtor for unpaid pre-petition contributions and for withdrawal liability. The Funds' proof of claim did not seek post-petition administrative expenses. As of August 21, 1992 the Funds knew the case had been converted to Chapter 7.

10. In May 1998, the Trustee's counsel contacted the Funds' counsel regarding the calculation and support for the two proofs of claim. During that telephone conversation the Funds' counsel inquired regarding administrative expense claims.

11. In July, 1998, the Funds' counsel provided the Trustee's counsel with a copy of an audit performed by the Funds which indicated that Debtor owed the Funds a total of $49,841.88 for unpaid contributions earned during the post-petition, pre-conversion period.

12. On November 5, 1999 the Trustee objected to the Funds' two Proofs of Claim (Claim No. 11650, which asserted a pre-petition § 507(a)(4) priority claim in the amount of $54,448.61, and Claim No. 11651, which asserted a pre-petition § 507(a)(4) priority claim in the amount of $57,380.77) as well as the Funds' potential Chapter 11 administrative expense claims on the ground that they were untimely.

13. On December 3, 1999 the Funds filed a response to the Trustee's Objections, together with a Request for Immediate Payment of their post-petition, pre-conversion claims with interest pursuant to which the Funds seek payment of their Chapter 11 administrative expense claims.

14. The Trustee subsequently withdrew his objections to the Funds' two proofs of claim for pre-petition expense, but continued to object to the potential allowance of administrative expense claims because of the delay in filing.

15. For purposes of the March 9, 2000 hearing the Trustee does not dispute that the estate failed to make post-petition payments of $49,841.89 to the Funds which were required pursuant to the collective bargaining agreement.

## CONCLUSIONS OF LAW

■ The Trustee objects to the Funds' post-petition, pre-conversion administrative claims on the basis that they were untimely filed. The Trustee contends that

the Order of Conversion set a July 24, 1991 bar date for administrative expense applications. The Trustee argues that § 503[1] of the Bankruptcy Code governs the allowance of administrative expenses and "is the start and finish of the Court's analysis." (Trustee Mem. at 5.) The Trustee frames the issue as whether or not cause exists to permit the Funds to tardily file their request for payment of administrative expenses.[2] Although the Trustee concedes that the Funds did not receive the Conversion Order, he contends that as of August 21, 1992 the Funds were aware the case had been converted from Chapter 7 to Chapter 11 and are therefore unable to show cause beyond that date for their failure to file an administrative expense application.

The Funds argue that even if a bar date for post-petition, pre-conversion administrative expenses was set in the case, its claims are allowable pursuant to 11 U.S.C. § 726(a)(1). The Trustee counters that the cases cited by the Funds in support of their argument that late filed administrative expense claims are entitled to § 726(a)(1) distribution apply only to late filed pre-petition priority claims, not tardy administrative expense applications, and that such a distinction renders § 726(a)(1) irrelevant to the Court's analysis.

## I. Entitlement of Late Filed Administrative Expense Claims to § 726(a)(1) Priority Distribution

Contrary to the Trustee's assertion, § 726, not § 503 is the starting point of the Court's analysis. Section 726 provides the order in which property of the estate is to be distributed. The version of § 726 applicable to this case provides in relevant part:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of such claim under section 501(a) of this title

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph 2(c) of this subsection; . . .

11 U.S.C. § 726 (West 1991).

---

1. The version of § 503 applicable to this case provides in pertinent part:

   Allowance of administrative expenses
   (a) An entity may file a request for payment of an administrative expense.
   (b) After notice and a hearing, there shall be allowed, administrative expenses, . . . including—
   (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; . . .
   11 U.S.C. § 503 (West 1991).

2. The Trustee's contention that the Court must decide whether cause exists to permit the Funds to tardily file their request for payment of administrative expenses is erroneous. Prior to the Bankruptcy Reform Act of 1994 ("Reform Act"), § 503 did not contain a timeliness requirement. *See supra* note 1. The Reform Act added the words "timely" and "may tardily file such a request if permitted by the court for cause." The Trustee acknowledges the amendment but argues that cause is an implicit requirement when a court considers an application for administrative expenses filed after the bar date. The Court disagrees.

■ In the absence of a subordination agreement or equitable subordination by the court pursuant to § 510, § 507 claims are paid first. Section 507 sets forth the order of priority expenses and claims and provides that administrative expenses that are allowed under § 503(b) have first priority. *See* 11 U.S.C. § 507 (West 1991).

Prior to the Reform Act, § 726(a)(1) made no distinction between the payment of timely and tardily filed priority claims. The circuit courts that have addressed the issue, including the Eleventh Circuit Court of Appeals, have concluded that, based upon the plain language of § 726(a)(1), priority claims are entitled to first priority status in a Chapter 7 distribution whether or not they are timely filed. *See Cooper v. IRS (In re Cooper),* 167 F.3d 857, 859 (4th Cir.1999); *IRS v. Davis (In re Davis),* 81 F.3d 134, 135 (11th Cir.1996); *In re Pacific Atl. Trading Co.,* 33 F.3d 1064, 1067 (9th Cir.1994) (stating "[t]he contrast in the three subsections' treatment of late and timely claims indicates Congress intended priority claims to receive first distribution regardless of whether proof of the claim was filed timely or late."); *In re Vecchio,* 20 F.3d 555, 559–560 (2d Cir.1994); *United States v. Cardinal Mine Supply,* 916 F.2d 1087, 1091 (6th Cir.1990). *But see United States v. Waindel (In re Waindel )* 65 F.3d 1307, 1311–1312 (5th Cir.1995) ("allowing" tardily filed priority claim in a Chapter 13 case but refusing to accord it first tier priority status). *Cf. In re Cole,* 172 B.R. 287, 292 (Bankr.W.D.Mo.1994) ("allowing" IRS' tardily filed priority claim but equitably subordinating it to the claims of general unsecured creditors); *In re Sea Air Shuttle,* 168 B.R. 501, 505–506 (Bankr. D.P.R.1994) (relegating tardily filed administrative expense claim in converted case to § 726(a)(2) status); *In re Brennan,* 167 B.R. 316, 317 (Bankr.D.Mass.1993) (holding that 11 U.S.C. § 726(a)(3) can be read to encompass both general non-priority claims and tardily filed § 507 priority claims and relegating IRS' tardily filed priority claim to § 726(a)(3) status).

The Trustee's attempted distinction between late filed priority claims and late filed administrative expense applications is no distinction at all. *Vecchio,* upon which the Eleventh Circuit in *Davis* relied, addressed a similar argument. *See* 20 F.3d at 558. In *Vecchio* the trustee objected to a late filed § 507(a)(7) tax claim on the basis that it was tardily filed. *See id.* The trustee argued that for a claim to be allowed pursuant to § 507, it must have been timely filed pursuant to Rule 3002. *See id.* The Court rejected the Trustee's argument stating "[n]owhere does the trustee account for the language in subsections (a)(2) and (a)(3) of § 726 which expressly refers to 'allowed' claims that are 'tardily filed' and, indeed, orders their payment. Plainly, the scheme set forth in § 726(a) imposes no threshold requirement of timely filing for a claim to be 'allowed' and thus eligible for payment." *See Id.*

■ In the case at bar, the Trustee's implicit argument that an administrative expense claim must be timely filed pursuant to § 503 so that it falls within the ambit of § 507(a)(1), and only then is entitled to § 726(a)(1) distribution, must fail for the same reason. The line of authority that holds that late filed priority proofs of claim for pre-petition taxes are entitled to first tier distribution pursuant to § 726(a)(1) applies with equal force to late filed administrative expense claims. The Funds failure to timely file a claim for administrative expenses is of *no consequence* to its status as a § 726(a)(1) priority claimant. As mandated by the Eleventh Circuit in *Davis,* the Funds' administrative expense claims are entitled to § 726(a)(1) priority status. *See* 81 F.3d at 135. In light of the Court's holding that tardily filed priority claims, including administrative expense claims, are entitled to first priority status in a Chapter 7 distribution, the Court need not address the Funds' remaining arguments.[3]

---

3. The Funds also argue:
    a. Because they were *pre-petition creditors* and post-petition claimants known to

Debtor and the Trustee, their post-petition, pre-conversion claims can not be barred

## II. Allowance of Interest on the Funds' Administrative Expense Claims

Having determined that the Funds' administrative expense claims are entitled to § 726(a)(1) distribution, the Court must determine whether the Funds are entitled to interest on their claims and if so, the priority to which it is entitled. The Funds seek interest on their administrative claims from the date the unpaid contributions became due until they are paid. Initially the Funds assert that they are so entitled because "the Trustee concedes that the Funds are either contractually or statutorily entitled to interest since he does not otherwise argue in his Memorandum." (Funds Br. at 27.) The Court is unimpressed with this argument and summarily disposes of it. Additionally, the Funds contend that the Trustee did not object to the merits of the Funds' administrative expense claims. Finally, the Funds contend that "[i]t has been established in this Circuit that interest must be paid on outstanding administrative claims." (Funds Br. at 28.)

The Trustee contends that in order for a claim to be granted administrative priority the expense must have bestowed a concrete benefit to the estate and that the interest on the Funds' administrative expense provided no benefit to the estate. The Trustee also argues that the allowance of interest would be inequitable because the Funds did not submit its request for payment of administrative expense until December 1999. Finally, the Trustee argues that a holding that interest accruing on all administrative expense claims until the date of payment is entitled to priority status would endanger the payment of the Funds pre-petition § 507(a)(4) priority claims.

because they did not receive actual notice of the bar date.
b. The Order of Conversion by its terms did not set a bar date for post-petition, pre-conversion claimants other than professionals retained in the Chapter 11 cases.

## A. Post–Petition, Pre–Conversion Interest on Administrative Expense Claims

■■■ Although the general rule is that interest on post-petition debts is not available in bankruptcy, it is well settled that post-petition, pre-conversion interest on administrative taxes is entitled to administrative priority pursuant to § 726(a)(1). *See In re Flo–Lizer, Inc.*, 916 F.2d 363, 366–367 (6th Cir.1990); *In re Mark Anthony Constr.*, 886 F.2d 1101, 1109 (9th Cir. 1989); *Allied Mechanical Servs., Inc.*, 885 F.2d 837, 839 (11th Cir.1989); *United States v. Friendship College, Inc.* (*In re Friendship College*), 737 F.2d 430, 432–433 (4th Cir.1984); *In re Rocky Mountain Refractories*, 208 B.R. 709, 714 (10th Cir. BAP 1997) (stating "the administrative expense claim, including interest incurred during the Chapter 11 case is paid as the claim under § 726(a)(1)."). *Cf. In re Varsity Carpet Servs. v. Richardson (In re Colortex Indus.)*, 19 F.3d 1371, 1384 (holding that interest accruing on trade debts incurred as administrative expenses during Chapter 11 entitled to same priority as trade debt itself). *But see In re Hospitality Assocs. of Laurel*, 212 B.R. 188, 200 (Bankr.D.N.H.1997) (lamenting courts' failure to apply § 726(a)(5) and holding that interest on administrative tax claims accruing during pendency of Chapter 11 case payable only as fifth priority). *Cf. In re Fred Swain, Inc.*, 97 B.R. 660, 662 (Bankr.S.D.Fla.1989) (holding that interest on post-petition pension payments was allowable only as a general unsecured claim). Clearly, the interest accruing on the Funds' administrative expense while the case was in Chapter 11 is entitled to § 726(a)(1) priority status.

c. No bar date for post-petition, pre-conversion claimants other than professionals retained in the Chapter 11 case was established because the Notice required by Federal Rule of Bankruptcy Procedure 1019(7) was never given in the case.

## B. Post–Conversion Interest on Administrative Expense Claims

■ Few Courts have specifically addressed the priority status of interest accruing on administrative expense claims after a case's conversion from Chapter 11 to Chapter 7. However, the Eleventh Circuit in *Colortex* held that interest on trade debts incurred as administrative expenses during a Chapter 11 is entitled to the same priority as the administrative expense itself, *but that upon conversion to Chapter 7, the interest accruing thereafter enjoys only the fifth priority pursuant to § 726(a)(5). See* 19 F.3d at 1384. (Emphasis supplied.) The Funds' Memorandum fails to acknowledge *Colortex's* unambiguous distinction between interest accruing on administrative claims during the pendency of a Chapter 11 case and interest accruing on administrative claims subsequent to the conversion of a case to Chapter 7. The Funds incorrectly contend that *Colortex* overruled *Fred Swain*, cited by the Trustee for the proposition that interest on administrative claims is not allowable as a priority claim. *Colortex* overruled *Fred Swain* only to the extent that *Fred Swain* held that interest accruing on administrative claims during the pendency of a Chapter 11 is not an administrative priority claim, but did not change *Fred Swain's* holding that post-conversion interest on administrative expenses is payable only as a general unsecured claim.

■ The Funds also contend that disallowance of the post-conversion interest as a priority claim would unjustly enrich the estate. "The principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than simply to compensate the claimant." *Colortex,* 19 F.3d at 1383. *Colortex's* discussion of unjust enrichment lent support to its holding that post-petition, pre-conversion interest on administrative expense trade debts is entitled to administrative priority status, but clearly does not support the Funds' argument that post conversion interest on administrative expenses is similarly entitled.

## III. Sanctions against the Trustee and the Trustee's Attorney

■ The Funds request the imposition of sanctions and an award of attorney's fees and costs against the Trustee and the Trustee's Attorney pursuant to Rule 9011, Federal Rule of Bankruptcy Procedure [4] based upon the following:

1. The Trustee's objections to the Funds' claims could not have been well grounded in fact because: (a) The Trustee scheduled the Funds' claims in the schedule of unpaid debts; and (b) The Trustee concedes the Funds were denied fundamental due process because they were never served with the Order, the Clerk's Notice, or a Rule 1019(7) notice; [5]

2. In light of *Davis*, the Trustee's objections to the Funds' administrative expense claims were not warranted by existing law;

---

4. Rule 9011 provides in relevant part:

(b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED.R.BANKR. P. 9011(b)(2),(3).

5. Rule 9011 was amended in 1997 to conform to the 1993 amendment to Federal Rule of Civil Procedure 11. The Funds' memorandum quotes and relies on the outdated version of the Rule. "Well grounded in fact" is no longer part of the Court's analysis. The

3. The Trustee attempts to mislead the Court by citing sections of the Bankruptcy Code that do not apply to cases commenced before October 22, 1994; and

4. The Trustee's objection to the administrative expense claim was for the sole purpose of harassing the Funds into making an unfair settlement and/or obtaining disallowance of the Funds claims altogether.

A court considering the imposition of sanctions pursuant to Rule 9011 must determine: 1) whether, based on the facts and law available to the signer at the time the document was filed or served, the attorney or signing party made a reasonable inquiry to determine the factual and legal legitimacy of the document; and 2) whether the attorney or signing party interposed the document for any improper purpose. See *In re Olympia Corp.*, 189 B.R. 846, 851 (Bankr.M.D.Fla.1995) (citing *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995)). The Court must apply an objective standard. *Id.* (citing *In re Kearney*, 121 B.R. 642, 646 (Bankr.M.D.Fla.1990)); *In re Jerrels*, 133 B.R. 161, 164 (Bankr.M.D.Fla. 1991). Such a standard requires the Court to "go beyond the mere assertions of good faith and determine instead whether a reasonable person would have taken the actions taken by the attorney in a particular case." *In re Malmen*, 140 B.R. 819, 824 (Bankr.M.D.Fla.1992).

The Trustee's scheduling of the Funds' unpaid administrative claims on the schedule of unpaid debts is of no consequence to the Trustee's contention that the administrative expense claims were tardily filed. The premise of the Trustee's argument is not that Debtor did not owe the Funds for unpaid contributions, but rather that the Funds' failure to file timely claims should result in their denial. The Funds' request for sanctions based on the Trustee's "concession" that the Funds were denied fundamental due process must fail for the same reason. The Funds next argue that pursuant to § 726(a)(1) and *Davis*, the Trustee's Objection to the Funds Request for Administrative Expenses was not warranted by existing law as required by Rule 9011. Although the Court declined to adopt the Trustee's arguments that § 503 imposed a timeliness requirement for administrative expenses and that a distinction exists between the treatment of late filed pre-petition, priority claims and late filed post-petition, pre-conversion administrative expenses vis-à-vis § 726(a)(1), the Court is unable to conclude that the Trustee objected to the Funds' claims for any improper purpose or that the actions of the Trustee and his counsel were unreasonable.

Finally, the Funds argue that the Trustee blatantly attempts to mislead the Court by citing current and thus inapplicable versions of § 503(a)[6] and § 726(a)(1) in his memorandum. The Court attributes the Trustee's citation of the current version of § 726(a)(1) to sloppiness rather than a blatant attempt to mislead.[7] The Funds' contention that the Trustee objected to the Funds' administrative expense claim for the sole purpose of harassing the Funds into making an unfair settlement and/or obtaining disallowance of the Funds claims altogether is pure speculation, in which the Court will not indulge. As such, sanctions against the Trustee and his counsel pursuant to Rule 9011 are not warranted. The Court will also deny the Funds' request for attorney's fees and costs and immediate payment of their priority and administrative expense claims.

Funds' reliance on the outdated version of the rule is ironic given the Funds' repeated argument that the Trustee relied on versions of the Bankruptcy Code not applicable to cases commenced before October 22, 1994 and that the Court should impose sanctions for such.

6. Although the Trustee cited the current version of § 503(a) in the text of his memoran-

dum, he acknowledged in a footnote that the word "timely" and the phrase "may tardily file such a request if permitted by the court for cause" were added by the Reform Act. See Trustee's Brief at 3 n. 1.

7. Indeed, the Funds cited an incorrect version of Rule 9011. *See supra* note 5.

## CONCLUSION

The Court will overrule in part and sustain in part the Trustee's Objection to the Funds administrative expense claims. The post-petition payments of $49,841.89 which the Funds were required to pay pursuant to the collective bargaining agreement will be paid as a priority claim pursuant to § 726(a)(1). The post-petition, pre-conversion interest on the Funds' administrative expense claims will also be paid as a priority claim pursuant to § 726(a)(1). The interest accruing on the Funds' administrative expense claims from the date of conversion of the case until the date of payment is entitled to payment pursuant to § 726(a)(5). Sanctions against the Trustee and his Counsel are not warranted and will not be imposed. The Court will deny the Funds' request for attorney's fees and costs and immediate payment of their priority and administrative expense claims.