United States Court of Appeals,

Eleventh Circuit.

No. 94-4316.

In re David G. MROZ, Debtor.

Eric S. GLATTER and Houston & Shahady, P.A., Plaintiffs-Appellants,

v.

Lynn MROZ, Defendant-Appellee.

Oct. 10, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-0921-BKC-AJC-A), A. Jay Cristol, Judge.

Before COX, Circuit Judge, HILL and GARZA[*], Senior Circuit Judges.

REYNALDO G. GARZA, Senior Circuit Judge:

This appeal involves sanctions imposed by the bankruptcy court against the law firm of Houston & Shahady, P.A. ("H & S") and Eric S. Glatter ("Glatter"), one of its associates. The district court below affirmed the sanctions. For the reasons stated below we reverse the judgment and remand the case for an evidentiary hearing.

BACKGROUND

On August 10, 1990, David Mroz ("Debtor") filed a voluntary Chapter 7 bankruptcy petition. Milton G. Friedman ("Trustee") was appointed interim Chapter 7 trustee in the bankruptcy case but eventually became the permanent trustee by virtue of 11 U.S.C. § 702(d). On September 18, 1992, the Trustee, with H & S as counsel, filed a Complaint for Recovery of a Preferential Transfer against

[*]Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

Lynn Mroz ("Mroz"), the Debtor's ex-wife.[1]  The complaint was based

on discussions with the Debtor and an affidavit that he provided.

The affidavit alleged that prior to the filing of the bankruptcy,

the Debtor received several checks, totaling $39,000, from Martin

Tool, Inc.  The Debtor allegedly converted these checks to cash and

transferred different sums of this money to various individuals,

including his ex-wife.

The bankruptcy court set a hearing on May 5, 1993 to resolve

this dispute.  Before the hearing date, Mroz denied the allegations

_____

[1]With certain exceptions, *see, e.g.,* 11 U.S.C. § 547(c), a
trustee may avoid any transfer of an interest of the debtor in
property—

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the
>     debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the date of the
>> filing of the petition;  or
>>
>> (B) between ninety days and one year before the
>> date of the filing of the petition, if such
>> creditor at the time of such transfer was an
>> insider;  and
>
> (5) that enables such creditor to receive more than
>     such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this
>> title;
>>
>> (B) the transfer had not been made;  and
>>
>> (C) such creditor received payment of such debt to
>> the extent provided by the provisions of this
>> title.

11. U.S.C. § 547(b).

in the Trustee's complaint. She provided an affidavit affirmatively claiming that she in fact had not received any such monies from her ex-husband. Along with this steadfast denial, she requested sanctions against the Trustee and his attorneys for failing to make a reasonable inquiry into the charges set forth in the complaint. Approximately two and a half months before the date of the hearing, Mroz also took limited discovery from the Trustee. The discovery established that the Trustee had no other evidence apart from the Debtor's affidavit and testimony to prosecute the complaint. Furthermore, during this period neither the Trustee or H & S attempted to engage in any form of discovery to further explore the factual basis of the complaint.

At the designated time, Mroz and her able counsel flew to Miami (from Detroit) for the bankruptcy hearing but neither the Trustee or Bart Houston ("Houston"), the attorney handling the case for the Trustee, were present. The hearing was to commence at 1:30 p.m., but Houston contacted the bankruptcy court and informed it that he was appearing before another court in Ft. Lauderdale at that time. In an effort to accommodate Houston's conflicts, the bankruptcy court postponed the hearing until 2:30 that afternoon. Again, Houston failed to arrive at the designated time. However, the Trustee appeared in court and informed the bankruptcy court that Houston would not be able to attend the hearing and that his associate, Glatter, would stand in for him.[2]

At the hearing Glatter immediately requested a continuance

[2]Houston apparently called Glatter at the latter's car, via a cellular phone, and directed him to appear in court and handle the case on his behalf.

because he had been unable to serve the Debtor, its key witness, with a subpoena to compel him to appear at trial. The bankruptcy judge agreed to a continuance, but only if the Trustee would compensate Mroz and her attorney for air fare, cab fare and ten hours of attorney fees. The Trustee refused this offer so the hearing continued. Without the Debtor's testimony the Trustee was unable to introduce the Debtor's affidavit into evidence. Furthermore, the Trustee's testimony reflected that H & S took no steps to investigate the allegations against Mroz outside of securing the Debtor's affidavit. Indeed, the Trustee could not answer any specific questions about the alleged transfer of money from the Debtor to his ex-wife.

At the hearing, Mroz made an unopposed motion to dismiss the action for failure to set out all the elements of a preferential transfer. The motion was granted. Mroz also made an *ore tenus* motion for sanctions, which the court granted. The bankruptcy court justified the sanctions because, "between October 8, 1990 and the date that [the] lawsuit was brought, September 18, 1992, which is 23 months, and then continuing to the date of the response by the plaintiff to defendant's interrogatories, and that is dated February 16, 1993, so from the date of October the 8th of "90 to February 16 of 1993, no more information was obtained, and yet the lawsuit was brought." The bankruptcy court stated, "[t]his is, to be candid, outrageous." The court was outraged because the Trustee proceeded with trial on a simple affidavit which did not even identify the specific date of the alleged transfer, the debt the transfer was to repay, or the manner in which the transfer was

made.

The sanctions awarded amounted to $2,590, or the sums expended by Mroz to transport herself and counsel to the Miami hearing, and her attorney's fees. The bankruptcy court levied the sanctions under Bankruptcy Rule 9011 against Glatter, as the individual who signed the complaint, and H & S, as the law firm representing the Trustee. The district court affirmed these sanctions without discussion.

## DISCUSSION

As the second court in review of the bankruptcy court's judgment, we review the bankruptcy court's factual findings for clear error, and its legal conclusions *de novo*. *Georgian Villa, Inc. v. United States (In re Georgian Villa, Inc.),* 55 F.3d 1561, 1562 (11th Cir.1995). When reviewing the imposition of sanctions, the primary question before us is whether the sanctioning court abused its discretion. *See, e.g., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359, 369 (1990) ("[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination."); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27, 58 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion.").

### I.

On appeal Glatter and H & S claim that the bankruptcy court erred in assessing sanctions against them because the complaint was filed only after a reasonable investigation into the factual

allegations had been conducted.  Appellants state that at the time of its filing counsel acted prudently pursuant to information obtained in discussions with the Debtor and from facts alleged in his affidavit.  Additionally, H & S argues that even if the individual associate was sanctionable under Bankruptcy Rule 9011, the bankruptcy court erred in imposing sanctions on the law firm in light of the Supreme Court's decision in *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11.[3]  Like Rule 11, Bankruptcy Rule 9011 ties sanctions to an attorney's signature on a particular pleading or document which is filed with the court.  Thus, authorities applying these standards under Rule 11, prior to its amendment, [4]

---

[3]Bankruptcy Rule 9011 provides, in relevant part, as follows:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document;  that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case....  If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

[4]Recent amendments to Rule 11, effective December 1, 1993, have not yet been duplicated in Rule 9011.  These amendments have no impact on our discussion in this section, however, they become

may be useful in applying Bankruptcy Rule 9011.

Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose. *In re Smith,* 82 B.R. 113, 114 (Bankr.D.Ariz.1988); Bankruptcy Rule 9011. Like Rule 11, the bankruptcy code permits sanctions only if the objectionable court paper is signed in violation of the rule. *See Bankruptcy Rule 9011; Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995). "Accordingly, the court's inquiry should only focus on the merits of the pleading gleaned from the facts and law known or available to the attorney *at the time of filing." Jones,* 49 F.3d at 694-95 (original emphasis); *Corp. of the Presiding Bishop v. Assoc. Contractors, Inc.,* 877 F.2d 938, 943 (11th Cir.1989), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1133, 107 L.Ed.2d 1038 (1990); *In re General Plastics Corp.,* 170 B.R. 725, 732 (Bankr.S.D.Fla.1994). "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1506 (11th Cir.1993) (quoting Fed.R.Civ.P. 11, Advisory Committee Note).

Furthermore, this Circuit has determined that Rule 11 does not impose a "*continuing obligation* " on a party to amend a complaint, so long as, at the very least, the complaint was reasonably interposed in the first place. *Bishop,* 877 F.2d at 943.

more relevant in Section II.2., discussed *infra.*

Because Bankruptcy Rule 9011 tracks the present tense language of Rule 11,[5] the former also does not impose a continuing obligation on the party to amend the complaint. *In re General Plastics Corp.,* 170 B.R. at 732 (citing *Bishop,* 877 F.2d at 943).

When a court is confronted with a motion for sanctions under Rule 11 or Bankruptcy Rule 9011, it must first determine whether the party's claim is objectively frivolous, in view of the law or facts, and then, if it is, whether the person signing the document should have been aware that it was frivolous. *Jones,* 49 F.3d at 695 (citing *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1563 (11th Cir.1992)). In other words, we must inquire whether she would have been aware that it was frivolous if she had conducted a reasonable inquiry. *Id.* If an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound. *Id.* The reasonableness of the prefiling inquiry may depend on the following factors: the time available to the signer for investigation, whether he had to rely on a client for information as to the underlying facts, and whether the paper was based on a plausible view of the law. *Id.* (citing *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en banc)). The reasonableness of the inquiry may depend on the extent to which factual development necessitates discovery. *Id.*

A complaint is factually groundless and merits sanctions

---

[5]Bankruptcy Rule 9011 provides that the signing of a pleading or other paper is a certificate that the paper "*is* well grounded in fact and *is* warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...."

where the plaintiff has absolutely no evidence to support its allegations. *In re General Plastics Corp.,* 170 B.R. at 731. Although the failure of proof at trial is not necessarily sufficient to support the imposition of sanctions, the lack of evidence to support a plaintiff's factual assertions or legal theories is an important element in the sanction analysis. *See Davis v. Carl,* 906 F.2d 533, 536-537 (11th Cir.1990) (weak evidence does not usually justify sanctions, unlike the case where no evidence is presented to support the factual allegations); *In re General Plastics Corp.,* 170 B.R. at 732.

*In re Inter-America Minerals, Inc.,* 107 B.R. 543 (N.D.Tex.1989), dealt with a situation similar to the one before us. In that case, the attorney for the trustee filed a complaint to recover preferential payments allegedly made to the appellee. The appellee filed a counterclaim alleging that the trustee and his attorney had not made a reasonable inquiry into the law and the facts before signing and filing the complaint, and that they were therefore in violation of Bankruptcy Rule 9011. The bankruptcy court found that sanctions were proper against the attorney and the trustee. On appeal, the district court reversed the sanctions ruling. Before signing the document, the attorney and the trustee had discussed the basis for the complaint on several occasions. The attorney had also taken limited discovery from the president of the debtor corporation to establish that the debtor was several months behind in its debt payments. There was also evidence before the court showing that the appellee had received payment of 100% of the debtor's debt within the 90 day period prior to the filing of

the debtor's bankruptcy. Based on these facts, the court held that the trustee and his attorney had sufficient reason to believe that the payment made by the debtor to the appellee may have been a preferential transfer. *Id.* at 546. The sanctions were erroneously imposed because the filing of the complaint appeared to be a good faith effort to investigate what seemed to be a preferential payment. *Id.*

As *Inter-America* demonstrates, our focus under Bankruptcy Rule 9011 is what was known by the signing attorney at the time the pleading was filed. We conclude that at the time of the filing, Glatter had a good faith belief after reasonable inquiry that the complaint was well grounded in fact. There was nothing known to Glatter at that time he signed the complaint to lead him to believe that the factual allegations were frivolous. As in *Inter-America,* the Trustee had several discussions with its counsel concerning the alleged preferential transfers. The appellants also discussed the alleged preferential transfers with the Debtor and secured an affidavit from him, under penalty of perjury, concerning the money transfers. Regarding Mroz, the affidavit stated that the Debtor, while insolvent,[6] had received significant funds from a third party ninety days prior to the filing of the bankruptcy, that some of those funds were transferred for the benefit of his ex-wife, and that this was done in satisfaction of his support obligations to

---

[6]For purposes of section 547, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." § 547(f).

her.[7]  These factual allegations, if true, would likely establish a preferential transfer to Mroz.  Thus, although the affidavit (and the Debtor's testimony) may have been insufficient to succeed at trial, under Bankruptcy Rule 9011 it was sufficient to warrant the filing of the complaint.  In fact, the Trustee had a duty to act based on the Debtor's affidavit which provided at that time the sole evidence of the alleged preferential transfer.[8]  Indeed, we note that this same affidavit led to the filing of several actions which allowed the Trustee to avoid over $18,000 in preferential transfers.  The complaint against Mroz was reasonably interposed in the first place.  Therefore, sanctions were improper against the signer of the complaint.

However, the problem with the instant case, as noted by the bankruptcy court, is that after the filing of the complaint, neither the Trustee nor H & S took any steps to gather evidence to conclusively establish the preferential transfer.  They conducted absolutely no discovery in preparation for trial.  H & S did not

[7]The Debtor's affidavit was filed October 8, 1990.  In it he specifically alleged having transferred $6,660.00 to Ms. Mroz—

> 2. Within ninety (90) days prior to the filing of the bankruptcy proceedings, I received funds from Martin Tool & Machine Co., which funds were disbursed for the below indicated reasons as follows:
>
> > (b) Lynn Mroz (Ex-Wife) Back support and separation obligations $4,400.00.
> >
> > (1) Miscellaneous house repairs on house awarded to Ex-Wife in divorce proceedings $2,260.00.

[8]A trustee in bankruptcy has a statutory duty to "collect and reduce to money the property of the estate ...", and to "avoid any transfer of an interest of the debtor in property made on or within 90 days before the date of the filing of the petition...."  11 U.S.C. §§ 704(1), 547(b)(4)(A).

even depose Ms. Mroz or the Debtor.  Moreover, H & S did not produce the Debtor at trial nor introduce his affidavit in evidence.  More importantly, Mroz denied receiving such monies and filed a motion for sanctions because H & S allegedly did not inquire into the facts of the affidavit.  At the very least, H & S was put on notice that the affidavit may have been inaccurate as to the Debtor's ex-wife.

This Court cannot determine from the record whether H & S discovered at some point that the factual allegations against Mroz were false, or if they believed them to be true throughout the litigation.  Unfortunately, Rule 9011 did not impose a continuing obligation on H & S to obtain more information or revaluate its position as the case developed.  Nevertheless, this rule is not the only basis for imposing sanctions against an attorney or other party;  sanctions may be justified under the bankruptcy court's inherent power.  *See, e.g., Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1224 (3rd Cir.1995) (bankruptcy court imposed sanctions under Rule 11 and Bankruptcy Rule 9011 but district court affirmed them under bankruptcy court's inherent power to sanction and appellate court affirmed).  If so, the rule is settled "that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."  *Brown v. Allen,* 344 U.S. 443, 459, 73 S.Ct. 397, 408, 97 L.Ed. 469, 490 (1953) (quoting *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224, 230 (1937)) (other citation omitted).

II.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court addressed the nature and scope of a federal court's inherent power to control the proceedings and the conduct of the parties involved. The Court acknowledged that " "certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' " *Id.*, 501 U.S. at 43, 111 S.Ct. at 2132, 115 L.Ed.2d at 44 (quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259, 260 (1812)) (other citation omitted). These powers are necessarily vested in courts to manage their affairs to "achieve the orderly and expeditious disposition of cases." *Id.* These inherent powers, which are incidental to a federal court, include the power to control and discipline attorneys appearing before it. *Id.* (citing *Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152, 152 (1824)).[9] However, because of their potent nature, "inherent powers must be exercised with restraint and discretion." *Id.*, 501 U.S. at 42-43, 111 S.Ct. at 2131-32, 115 L.Ed.2d at 45 (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488, 499-500 (1980)). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the

---

[9]These incidental powers also include, for example, the power of a federal court to control admission to its bar, punish parties for contempt, vacate its own judgment upon proof that a fraud has been perpetrated upon the court, bar a disruptive criminal defendant from the court room, dismiss an action on grounds of forum non conveniens, act sua sponte to dismiss a suit for failure to prosecute, and assess attorney's fees against counsel. *Chambers,* 501 U.S. at 43-44, 111 S.Ct. at 2132-33, 115 L.Ed.2d at 44-45.

judicial process." *Id.* For example, circumstances which may dictate the exercise of inherent power to assess attorney's fees against counsel, include those where a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (citations omitted). The imposition of sanctions in that circumstance "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.' " *Id.,* 501 U.S. at 46, 111 S.Ct. at 2133, 115 L.Ed.2d at 46 (citation omitted).

The fact that rules such as Rule 11 and Bankruptcy Rule 9011 have been promulgated by Congress does not displace a court's inherent power to impose sanctions for a parties' bad faith conduct. *See id.,* 501 U.S. at 46, 111 S.Ct. at 2133, 115 L.Ed.2d at 46; *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1224 (3rd Cir.1995). Indeed, the "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," *Chambers,* 501 U.S. at 49, 111 S.Ct. at 2135, 115 L.Ed.2d at 47, for these rules are not substitutes for the inherent power. *Id.,* 501 U.S. at 46, 111 S.Ct. at 2133, 115 L.Ed.2d at 46. The inherent power to sanction is both broader and narrower than these other means of imposing sanctions: "[W]hereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range

of litigation abuses." *Id.* Therefore, although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power. *See id.,* 501 U.S. at 49, 111 S.Ct. at 2135, 115 L.Ed.2d at 48; *Charter,* 57 F.3d at 1224 ("Moreover, we have previously rejected the proposition "that once a claim is held not to violate Rule 11, the court is prevented from imposing sanctions under its inherent power.' ") (quoting *Gillette Foods Inc. v. Bayernwald-Fruchteverwertung,* 977 F.2d 809, 813 (3rd Cir.1992)).

Invocation of a court's inherent power requires a finding of bad faith. *Chambers,* 501 U.S. at 49, 111 S.Ct. at 2135, 115 L.Ed.2d at 48. The court must afford the sanctioned party due process, both in determining that the requisite bad faith exists and in assessing fees. *Id.* Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why. *Donaldson v. Clark,* 819 F.2d 1551, 1559-60 (11th Cir.1987) (discussing Rule 11 sanctions). Notice can come from the party seeking sanctions, from the court, or from both. *Id.* at 1560. In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions. *Id.*

A.

From the onset, Mroz has alleged that this action was instituted without a reasonable inquiry into the underlying facts. Arguably, she has also accused H & S and its attorneys of acting in bad faith because the litigation continued after Mroz denied the

complaint without any attempts to verify the facts alleged. Although these actions are not as egregious as in *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215 (3rd Cir.1995) (bankruptcy court made several and specific findings to support a conclusion that the law firm filed a frivolous law suit without any factual foundation and that it was filed for an improper purpose and in subjective bad faith), one could possibly conclude that the law firm's conduct in handling this litigation amounted to bad faith. On the other hand, one might conclude that this conduct simply demonstrated a lack of diligence on the part of the law firm. It is very clear that the bankruptcy court was outraged at the events that transpired before it, but we cannot glean from the record whether this outrage stemmed from a belief that H & S and its attorneys acted in bad faith, or whether it was due to a belief that they acted negligently or without due diligence. Because the reputation of a law firm and its attorneys is at stake, we believe it prudent to remand this case to the bankruptcy court for an evidentiary hearing to determine if these parties acted in bad faith. This hearing will afford the parties involved due process.

B.

On remand, if the bankruptcy court finds that the litigation below continued in bad faith after the complaint was filed, then the question remains who to sanction. It would seem that Glatter should not face any sanctions because he acted prudently at the time the complaint was filed. However, it will be for the bankruptcy court to decide which attorneys conducted the instant

litigation and thus determine if any should be sanctioned.[10]  The bankruptcy court may even find that the law firm itself should be sanctioned, a finding that would clearly be proper under the law.

H & S maintains that Rule 11 and Bankruptcy Rule 9011 do not allow sanctions to be imposed on law firms.  That is partly correct.  In *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Supreme Court held that Rule 11 could be used to sanction the individual attorney (or party) who signed the pleading in question, but not the attorney's law firm.  However, Congress amended Rule 11 to change that.  Among other things, the amendments, which became effective December 1, 1993, now allow a federal court to sanction a law firm under Rule 11 as well as individual attorneys and parties.  These changes have not been duplicated in the Bankruptcy Code, yet, even if they were, we would be bound to apply the law as it existed at the time the events herein took place, which occurred prior to the date of these amendments.  Moreover, we have already found that sanctions are not warranted under Bankruptcy Rule 9011.  However, notwithstanding this Rule,[11] there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith.  *See, e.g., Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,*

[10]The facts herein appear to indicate that Houston was the attorney supervising all the actions commenced by the Trustee. However, this is a question of fact for the bankruptcy court to resolve.

[11]We note that at least one court has found that law firms themselves are not sanctionable under Bankruptcy Rule 9011.  *In re Marcus Hook Development Park, Inc.,* 153 B.R. 693, 705 (Bankr.W.D.Pa.1993).

57 F.3d 1215 (3rd Cir.1995). For this reason, sanctions against H & S may be properly imposed under the bankruptcy court's inherent power.

## CONCLUSION

For the foregoing reasons, we REVERSE the findings of the bankruptcy and district courts, and REMAND the case for an evidentiary hearing to determine if the law firm in question, H & S, or its attorneys acted in bad faith.