In re UNITED STATES VOTING MACHINE, INC., a former Colorado corporation, and now a partnership, EIN 84–1114301, Debtor.

In re UNITED STATES VOTING MACHINE, INC., a Delaware corporation, EIN 84–1114301, Debtor.

Bankruptcy Nos. 96–12776–SBB, 96–12777–PAC.

United States Bankruptcy Court, D. Colorado.

Aug. 20, 1998.

John C. Smiley, Denver, CO, for Trustee.

James T. Ayers, Littleton, CO, for Debtors.

John T. Sullivan, Boulder, CO, for Benchmark Electronics, Inc.

Darrell M. Daley, Chrisman, Byynum & Johnson, Boulder, CO, for Settling Creditors.

Theresa Moore, Denver, CO, for Anthony Riker, Ltd.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on July 23, 1998 on attorneys' fee requests filed by (1) Anthony Riker Ltd., (2) Jeffrey Weinman, Chapter 7 Trustee, (3) Benchmark Electronics, Inc., and (4) Tom Foster, Ann Gardner, William Hunt, Mark Lankton, Kermit Lohry, and Linda Woods ("Settling Creditors"), and Debtors' and Kenneth Malpass' Response to each request for attorneys' fees and Request for Reconsideration of Award of Sanctions.

The attorneys' fee requests were filed by the parties as part of this Court's imposition of sanctions against Debtors and Kenneth Malpass in the form of an award of attorneys' fees to opposing counsel. Debtors' and Malpass' principal objection to the imposition of sanctions is that the Court failed to comply with the procedural mandates of Fed. R.Bankr.P. 9011 in imposing such sanctions and that this Court lacks the inherent power to impose monetary sanctions. For the reasons set forth below, the Court denies the Request for Reconsideration of Award of Sanctions and awards attorneys' fees in the amounts requested.

### ISSUE

The issue before the Court is, given the substantial amendments in 1997 to Fed. R.Bankr.P. 9011, do courts still have the inherent power to impose monetary sanctions to prevent abuses of the judicial process and to control and manage the conduct of litigation? More specifically, does newly amended Rule 9011(c)(2)(B)—a provision which prescribes specific procedures for imposition of Rule 9011 sanctions on the court's own initiative—limit or preclude courts from imposing sanctions in a manner other than that specified in Rule 9011(c)(2)(B)?

### BACKGROUND

Each of the above-captioned bankruptcy cases was commenced as an involuntary case

in March 1996. Upon entry of the Orders for Relief, the cases were converted to Chapter 11 of the Bankruptcy Code. On August 21, 1996, the Court entered an Order substantively consolidating these cases into Case No. 96–12776–SBB, and on March 11, 1997 the consolidated case was converted to Chapter 7 of the Bankruptcy Code. Thereafter, Jeffrey A. Weinman was appointed as the Interim Trustee and he continues to serve as the Chapter 7 Trustee.

Since before commencement of this case, the Debtors' business has been marked by bitter, ongoing disputes and seemingly interminable litigation among different factions, or parties, purporting to have an interest in the Debtors, and various creditors. When filed, this case exemplified a classic fight over control of a corporation and control over certain valuable intellectual property interests.

Following the expiration of the July 10, 1997 bar date for filing proofs of claim, the Trustee filed 22 claim objections, all of which have been settled.[1] These settlements reduced the claims against the Estate by approximately $1,573,000.00. The Trustee now anticipates that the total amount of allowed unsecured claims in this case will be $275,-000.00. There are no secured claims, and unpaid administration expense claims, including the Trustee's fee and the Estate's counsel's fees, are estimated to be $18,000.00 and $21,000.00, respectively. According to the Trustee, except for potential litigation claims against Kenneth Malpass[2] and others, all of the assets of the Estate have been administered.

On January 5, 1998, following the settlement of numerous outstanding claims disputes, Debtors and Malpass, jointly, filed a Motion to Dismiss Consolidated Cases pursuant to 11 U.S.C. § 707(a), and Fed. R.Bankr.P. 1017(d). The Motion to Dismiss asserted that there is "cause" within the meaning of 11 U.S.C. § 707(a) to dismiss the cases because (1) the internal corporate disputes which precipitated the filing and prose-cution of the cases have been resolved, (2) there are ample cash assets in the consolidated Estate to pay all allowed administrative expenses, (3) any outstanding claims disputes can be efficiently resolved outside of bankruptcy via negotiation, or, if necessary, in another court, (4) dismissal would not be prejudicial to the Debtors because they are not individuals entitled to a Chapter 7 discharge, (5) dismissal would stop the accrual of substantial and mounting Chapter 7 administrative expenses, and (6) dismissal would enable the Debtors and equity holders to capitalize on current and future financial and business opportunities.

The Court received five separate Objections to the joint Motion to Dismiss from the following parties: (1) the Chapter 7 Trustee, Jeffrey Weinman, (2) Mark Voting Systems, Inc., (3) Benchmark Electronics, Inc., (4) Tom Foster, Ann Gardner, William Hunt, Mark Lankton, Kermit Lohry, and Linda Woods (the "Settling Creditors"), and (5) Anthony Riker, Ltd. (collectively hereinafter "Objecting Creditors"). Objecting Creditors asserted that dismissal would not be in the best interests of creditors because there was no assurance or guarantee that creditors' claims would be paid if the case was dismissed. As summarized by the Chapter 7 Trustee, the Estate now has $475,000.00 in cash which would allow 100%, plus interest, distribution to all unsecured creditors. If the case were dismissed, however, Malpass, who purports to own a controlling interest in Debtors, would gain control over the Estate's cash before a distribution could occur. According to the Objecting Creditors, this would result in the payment of claims being disrupted, uncertain and, at the very least, delayed. The Objecting Creditors also raised the following concerns: (1) the settlement agreements previously reached among the parties did not contemplate dismissal of the case prior to distributions on creditors' claims, (2) dismissal would hinder, not aid, payment of administrative expense claims, (3) dismissal is contrary to one of the purposes

---

1. Although the Trustee has settled all claims disputes, a few settlements have not been approved by the Court due to outstanding, unresolved objections.

2. Kenneth Malpass—a significant equity holder of and partner in the Debtor—has played a key, if not central, role in the business of the Debtors and these bankruptcy cases.

of involuntary bankruptcy cases, i.e., to force resolution of disputes and payment of creditors' claims, (4) dismissal would thwart any efforts to bring claims against Malpass, and (5) the filing of the Motion to Dismiss may have violated the terms of certain agreements reached among the parties.

In addition to requesting a hearing on the Motion to Dismiss and the Objections thereto, three [3] of the five Objecting Creditors also requested an award of all fees and costs incurred in responding to the Motion. One of the Objecting Creditors, the Settling Creditors, also requested that the Court impose sanctions against Debtors and Malpass under Fed.R.Bankr.P. 9011 for the filing of the Motion, which the Settling Creditors characterized as frivolous.

On February 10, 1998, the Court issued a Notice of Hearing setting the Motion to Dismiss and the Objections thereto for hearing on Thursday, March 12, 1998. Thereafter, on February 13, 1998, Malpass' attorney, F. Kelly Smith [4], filed a Motion requesting that the Court reschedule the March 12, 1998 hearing due to a conflict in his schedule. Additionally, the Chapter 7 Trustee requested a continuance of the hearing due to a conflict in his schedule. The Court granted the Motions of the Trustee and Malpass and rescheduled the hearing for April 21, 1998.

On April 15, 1998, six days prior to the rescheduled hearing, Debtors filed a Motion for Leave to Withdraw Motion to Dismiss. According to the statements in the Motion, Debtors were seeking withdrawal of the Motion to Dismiss, because "the Debtors, along with Kenneth B. Malpass, are working in conjunction with parties in interest to reach a consensual dismissal on terms that are satisfactory to all concerned." Debtors' April 15, 1998 Motion, p. 1. The Court, by notice dated April 16, 1998, advised the parties that the Motion for Leave to Withdraw would be considered at the previously scheduled April 21, 1998 hearing.

On April 17, 1998, the Settling Creditors filed a Response to Debtors' Motion for Leave to Withdraw Motion to Dismiss wherein the Settling Creditors asserted that Debtors' statement regarding working with parties in interest to reach a consensual dismissal was a misrepresentation. Attached to the Settling Creditors' Response is a series of correspondence between Debtors and certain objecting creditors. According to the Response, it was not until April 13, 1998, that counsel for Debtors wrote to the Objecting Creditors proposing a resolution of the Motion to Dismiss. Prior to that correspondence, according to the Objecting Creditors, they were not contacted by Debtors, Malpass or their attorneys, regarding working toward a consensual dismissal "on terms satisfactory to all concerned."

On April 21, 1998, the Court convened a hearing on the issues raised in the Motion to Dismiss, the Objections thereto, and the Motion for Leave to Withdraw the Motion to Dismiss. The Court found that the Motion to Dismiss lacked sound and sufficient grounds; that it continued a prior pattern of excessively litigious conduct by the Movants; and that it was withdrawn by the Debtors at the eleventh hour. The Court granted Debtors' Motion for Leave to Withdraw Motion to Dismiss. The Court noted that the Motion to Dismiss, particularly, and the subsequent Motion for Leave to Withdraw Motion to Dismiss generated a flurry of pleadings and legal fees, and consumed a substantial amount of legal time and resources. Accordingly, the Court indicated it would award reasonable attorneys' fees to those parties who filed objections to the Motion to Dismiss and gave the parties until April 30, 1998 to submit to the Court and serve on other parties to the dispute, legally sufficient statements of their fees. The Court then gave Debtors and Malpass until May 11, 1998 to file objections to an award of attorneys' fees, in whole or in part.

The Court received applications for attorneys' fees from the following parties in the amounts indicated: (1) Benchmark Electron-

---

3. Benchmark Electronics, Inc., the Settling Creditors and Anthony Riker, Ltd., requested an award of all attorneys' fees and costs incurred in responding to the Motion to Dismiss.

4. On March 27, 1998, this Court entered an Order Granting Motion to Withdraw as Counsel allowing F. Kelly Smith to withdraw as attorney for Kenneth B. Malpass.

ics ($2,929.50), (2) Jeffrey Weinman ($4680.00 [5]), (3) Anthony Riker, Ltd. ($2,051.00, plus costs of $95.96), and (4) the Settling Creditors ($5,489.00, plus costs of $150.39). Malpass and Debtors, jointly, filed Responses to each Application and, additionally, requested that this Court reconsider the imposition of sanctions.

In response to the Request for Reconsideration, this Court set a hearing for July 23, 1998 to consider the issues raised by Malpass and Debtors and to provide the parties with an opportunity to present evidence on the question of the propriety of the sanctions. At the hearing on July 23, 1998, neither Malpass nor his attorney appeared. Additionally, *no evidence was presented by Debtors on the question of sanctions or on the reasonableness of the fees awarded.* The central focus of the hearing was the legal argument of the parties concerning the Court's authority to impose monetary sanctions in light of recent amendments to Fed. R.Bankr.P. 9011.

## DISCUSSION

■ Although Fed.R.Bankr.P. 9011 was substantially amended in 1997,[6] those amendments do not limit or preclude this Court from imposing sanctions in a manner other than specified in Rule 9011(c)(2)(B). In other words, Rule 9011 is not the exclusive, controlling or single avenue available to a court for imposition of sanctions. Courts still retain the inherent power to impose monetary sanctions for conduct determined by the court to be abusive, unwarranted or in bad faith.

When this Court imposed sanctions, in the form of attorneys' fees incurred by the Objecting Creditors in opposing the Motion to Dismiss at the hearing on April 21, 1998, the Court specifically found that this case has been driven by "a one-upmanship framework" and that the parties had not "missed a trick in terms of invoking procedural gym-

nastics." April 21, 1998 hearing Transcript p. 3. Additionally, the Court noted it was not persuaded as to, nor did it discern what benefits there might be from, a dismissal, particularly considering the history of this case. Finally, the Court admonished Debtors and Malpass for the eleventh hour withdrawal of the Motion to Dismiss, which had generated a flurry of paperwork, cost the Objecting Creditors considerable legal time and unnecessary legal fees, and unduly taxed judicial resources.

In their written Responses to the Objecting Creditors' requests for attorney's fees, Debtors and Malpass argued that this Court did not have the authority to impose monetary sanctions in the form of an award of attorneys' fees to the Objecting Creditors. Additionally, Debtors and Malpass asserted that they were not afforded adequate due process. Specifically, they maintained that the Court's ruling on April 21, 1998, did not point out the conduct by Malpass and Debtors for which sanctions were granted.

At the July 23, 1998 hearing—scheduled in response to the Motion for Reconsideration, and convened solely to afford Debtors and Malpass [7] an opportunity to present evidence and advance arguments on the issue of sanctions—Debtors' counsel argued strenuously and exclusively that the sanctions imposed by this Court are prohibited by Rule 9011(c)(2)(B), which provides that

> Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

Fed.R.Bankr.P. 9011(c)(2)(B).

The Objecting Creditors, on the other hand, relying on *Roadway Express, Inc., v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), asserted in their

---

**5.** Initially, Jeffrey Weinman's Application included *fees of $630.00* for Mr. Weinman's time, in his capacity as Chapter 7 Trustee. This amount was in addition to the request for fees and costs for his attorney, John Smiley. This additional request for fees was orally withdrawn at hearing on July 23, 1998.

**6.** The amended version of Fed.R.Bankr.P. 9011 took effect on December 1, 1997.

**7.** Neither Malpass nor his attorney appeared for the hearing on July 23, 1998.

pleadings and at the July 23, 1998 hearing that this Court has inherent authority to impose sanctions, including an award of attorneys' fees, to prevent the willful abuse of the judicial process, to protect the orderly administration of justice, to maintain the authority and dignity of the court, and to manage its affairs. The Objecting Creditors asserted that the last minute withdrawal of a meritless Motion to Dismiss rendered the hearing on the Motion to Dismiss, scheduled months earlier, useless, resulting in a waste of the Court's and parties' time and resources and interfering with the judicial process.

In analyzing the dispute between the parties regarding the imposition of sanctions, this Court must first look to Rule 9011 and the purpose behind the 1997 amendments. In 1997, Rule 9011 was substantially amended to conform to the 1993 changes to Rule 11 of the Federal Rules of Civil Procedure. Because the language of Rule 9011 closely tracks the language of Rule 11 of the Federal Rules of Civil Procedure, this Court can, and will, rely on the Advisory Committee Notes to the 1993 Amendment to Rule 11 of Fed. R.Civ.P. The Advisory Committee Notes provide that the 1993 amendments to Rule 11 were intended to broaden the scope of an attorney's or pro se litigant's obligation to the court, while at the same time placing greater constraints on the imposition of sanctions and reducing the number of motions for sanctions presented to the court. Fed. R.Civ.P. 11 Advisory Committee Note (1993 Amendment). The Advisory Committee Note to the 1993 Amendment to Fed.R.Civ.P. 11 also states that

> **Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules....**

Fed.R.Civ.P. 11 Advisory Committee Note (1993 Amendment) (emphasis added).

As noted by the Advisory Committee, Rule 11, like Rule 9011, is only one avenue, albeit an important avenue, available to a court for imposing sanctions. Rule 9011(c)(1)(B), providing for monetary sanctions on the court's initiative, is limited to conduct that violates subdivision (b) of Rule 9011. Subsection (b) of Rule 9011 provides that by presenting a signed document to the court (whether by signing, filing, submitting, or later advocating it), an attorney or party certifies that he/she has conducted a reasonable inquiry into the fact and the law and that the document is well grounded in both, and that he/she is acting without any improper motive. *See Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 542, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991). There is no suggestion in the new Rule, or the Advisory Notes, that the 1997 revision is intended to supersede all other available tools to sanction litigation abuses or address the full range of litigation conduct or strategies which unduly and needlessly delay, impede, or increase costs of, litigation for other parties.

Courts must have other means available for enforcing judicial authority and preventing the full range of litigation abuses. These other means can co-exist, and tend to augment, Rule 9011's purpose of securing the just, speedy and inexpensive determination of every action. Fed.R.Civ.P. 11 Advisory Committee Note. Rule 11 is not, nor can it be, the only means available to a court to impose sanctions against a party.

A court's inherent power to sanction parties has a well-articulated, long-standing, and constant history. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court stated that

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose

silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132 (citations omitted).

The Supreme Court also addressed a court's inherent powers to impose sanctions in *Roadway Express,* cited by the Objecting Creditors in support of their position. In that case, the Supreme Court held that the general rule that litigants cannot recover attorney's fees does not apply when the opposing party has acted in bad faith. *Roadway Express,* 447 U.S. at 766, 100 S.Ct. at 2464. The Court elaborated that bad faith is not restricted to cases where the action is filed in bad faith, but it may also be found in the conduct of the litigation. *Id.*

In discussing this same concept of imposing sanctions based on the conduct of the parties, the Tenth Circuit expressed its "concern with the unnecessary burdens, both on the courts and on those who petition them for justice, that result from unreasonable, irresponsible and vexatious conduct...." *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir.1987). As stated by the Tenth Circuit,

> The power to assess costs, expenses, and attorney's fees against an attorney personally in the appropriate case is an essential tool to protect both litigants and the ability of the federal courts to decide cases expeditiously and fairly. The assessment of excess costs, expenses, or attorney's fees is a relatively mild sanction....

*Id.*

Although decided prior to the 1997 amendment to Rule 9011, the *Braley* court clearly held that federal courts are empowered to impose monetary sanctions by statutes and the rules of civil and appellate procedure, as well as their inherent right to manage their own proceedings. *Id.* at 1510. The Tenth Circuit also noted that sanctions imposed for a party's conduct need not rise to the level of subjective bad faith. Conduct may be sanctioned if it "constituted or was tantamount to bad faith." *Id.* at 1512.

Other courts have also held that the promulgation of rules such as Rule 11 and Bankruptcy Rule 9011 by Congress does not displace or eviscerate a court's inherent power to impose sanctions for a party's bad faith conduct. *See Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1224 (3rd Cir.1995); *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1575 (11th Cir.1995). As the Eleventh Circuit noted in *Glatter,* "Indeed, the 'inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct,' [Citations omitted] for these rules are not substitutes for the inherent power." *Id.* at 1575 (*quoting Chambers,* 501 U.S. at 49, 111 S.Ct. at 2135). The Eleventh Circuit also pointed out that

> The inherent power to sanction is both broader and narrower than these other means of imposing sanctions: "[W]here each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." Therefore, although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power.

*Glatter,* 65 F.3d at 1575 (citations omitted).

In a case decided after the 1997 amendment to Rule 9011, an Oklahoma bankruptcy court found that the court retained its inherent power to sanction a party for their bad faith conduct and that "[a] court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule 9011." *In re Nichols,* 221 B.R. 275, 279 (Bankr.N.D.Okla.1998) (*quoting In re Weiss,* 111 F.3d 1159, 1171, *cert. denied,* —— U.S. ——, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997)).

Debtors and Malpass would have this Court adopt a per se rule that a court cannot impose monetary sanctions, under any circumstances, unless it fully and strictly follows the procedures outlined in Rule 9011(c)(1)(b). Nothing in the Rule itself or in the Advisory Committee Notes indicates to

this Court that the 1997 amendments to Rule 9011 were intended to overrule the long line of cases, including Supreme Court cases, that have held a court has the inherent power to impose sanctions. Indeed, if that was the intention, surely it would have been noted in the Advisory Committee Notes. Additionally, it has long been recognized that courts need inherent powers to control litigation abuses that may or may not violate Rule 11 or Bankruptcy Rule 9011. It is clear to this Court that inherent powers are available to courts to impose monetary sanctions if the circumstances warrant it, whether the violation in question fits within the statutorily defined confines of Bankruptcy Rule 9011 or not.

In the within case, Debtors and Malpass filed a Motion to Dismiss that contained little, if any, good cause or sound reason for this Court to dismiss the cases. The Court, however, believes that each party deserves an opportunity to present their evidence to the Court in support of their position and that the Court owes a duty to review such evidence and argument without making any prejudged assumptions regarding the allegations contained therein. If this Court had issued an order to show cause, as required by Rule 9011(c)(1)(B), before it allowed Debtors and Malpass to present evidence and argument in support of the Motion to Dismiss or Motion for Leave to Withdraw Motion to Dismiss, it could be argued that the Court lacked impartiality and had already formed an opinion on the Motions without hearing the evidence or arguments offered by the parties. Prior to conducting a hearing on the Motion to Dismiss, this Court did not believe such an assumption was warranted or proper.

At the April 21, 1998 hearing on the Motion to Dismiss, however, Debtors and Malpass did not present any evidence, nor did they advance any credible arguments in support of the Motion to Dismiss. Additionally, Debtors filed their last minute Motion for Leave to Withdraw Motion to Dismiss. Those developments, coupled with unsubstantiated representations regarding allegations in the Motion for Leave to Withdraw Motion to Dismiss that the parties were working on a "consensual dismissal" of the case, led the Court to conclude that Debtors and Malpass were filing motions and advancing arguments primarily for the purpose of delay, harassment or unnecessarily increasing the costs of litigation. In light of that conclusion and this Court's familiarity with the contentiousness, belligerence, and bitterness involved in this case from day one, this Court believes sanctions are warranted against Debtors and Malpass.

Debtors and Malpass assert, however, that the Court may not impose sanctions against them due to the Court's failure to afford them adequate due process. The basic notion of due process requires that parties be appraised of any action against them and that they be allowed a reasonable opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Here, the Court made specific findings on the record at the April 21, 1998 hearing regarding the Motion to Dismiss and the imposition of sanctions against Debtors and Malpass. Debtors and Malpass were then afforded an opportunity to respond in writing to each Objecting Creditors' request for attorney's fees, and they did so. Additionally, Debtors and Malpass filed a Request for Reconsideration of Award of Sanctions reiterating their arguments against the imposition of sanctions. Finally, the Court set a separate hearing for July 23, 1998, to consider the Motion for Reconsideration and the imposition of sanctions. At that hearing, Debtors' counsel presented no evidence and his only legal argument centered on the amendment to Rule 9011, which he argued, precluded the Court from imposing sanctions. Malpass and his attorney did not even appear for the July 23, 1998 hearing. Through pleadings and Court hearings, this Court concludes Debtors and Malpass were afforded more than ample opportunity to respond to the action taken against them.

## CONCLUSION

Rule 9011, as it was amended in 1997, did not eviscerate or displace a court's inherent power to impose monetary sanctions. Although Rule 9011(c)(2)(B) provides one specific procedure available to courts to impose monetary sanctions, it is not the only avenue available. Courts possess inherent power, in

addition to and in conjunction with procedural rules, to sanction parties for a "full range of litigation abuses." The 1997 amendments to Rule 9011 did not limit or prohibit courts' long-standing authority to impose proper sanctions against parties in order to manage the conduct of litigation and to prevent abuse of the judicial process.

## ORDER

Accordingly, it is

ORDERED that Debtors' and Malpass' Request for Reconsideration of Award of Sanctions is DENIED.

IT IS FURTHER ORDERED that sanctions are imposed against Debtors and Malpass, jointly and severally, and in favor of Objecting Creditors in the form of an award of attorneys' fees and costs in the following amounts: [8]

| | |
|---|---|
| Benchmark Electronics | $2,929.50 |
| Jeffrey Weinman | $4,680.00 |
| Anthony Riker, Ltd. | $2,051.00, plus costs of $95.96 |
| Settling Creditors | $5,489.00, plus costs of $150.39 |

Such fees and costs may be paid by the Trustee from the Bankruptcy Estate, after distribution to creditors and payment of administrative expenses, but before any surplus is returned to Debtors.

8. No objection was raised to the reasonableness of the fees requested and the Court's review of same, independently, reflects that they are reasonable in amount, representing necessary services, under the circumstances.